## TYLER COUNTY LUMBER CO. v. WITHERS.

### No. 4867.

Court of Civil Appeals of Texas. Beaumont.

Sept. 17, 1953.

Rehearing Denied Oct. 7, 1953.

Allen, Smith, Neal & Lehmann, Houston, Campbell & Foreman, Livingston, for appellant.

Ross Hightower, Livingston, Sam G. Croom, Houston, for appellee.

WALKER, Justice.

The plaintiff, who is the appellee Withers, conveyed to Bradshaw and Windham, by deed dated May 6, 1949 "all that certain merchantable pine timber ten (10) inches in diameter and up, twelve (12) inches from the ground, at the time of cutting, and all that certain merchantable hardwood timber twelve (12) inches in diameter and up, twelve (12) inches from the ground at the time of cutting" upon a tract of 1,020 acres in the R.A. Irion League. Rights of ingress and egress were also granted, as were the rights to erect sawmills and lay roadways on the land and to use all necessary means to cut and remove the timber. This deed provided that "this conveyance is made upon the condition that—grantees shall have, and they are hereby granted, five (5) years from the date of this instrument within which to cut and remove said timber from said land, and any and all of said timber not having been cut and removed therefrom within such time shall revert to the grantor—and all of the right, title and interest of the said grantees—in and to said timber and all rights of whatsoever kind or character in anywise herein—granted—shall thereupon fully and finally—terminate."

This deed also provided: "It is further understood and agreed that the grantees herein shall cut over the area hereinabove described only one time. If it be necessary, because of weather conditions to cease cutting operations in one area and to carry on cutting operations in another area, they shall be permitted to do so with the express understanding, however, that this contract provides for only one cutting operation over said area here described."

This deed also provided: "It is further understood and agreed—that after the grantees—shall have completed their timber cutting operations over the entire tract—and shall have removed their mills, logging equipment, logs and other personal effects, they shall execute and deliver unto the grantor herein their release of the timber deed and grant here executed."

The habendum clause provided in part that grantees, their successors and assigns, should have and hold "the above described timber with all and singular the rights and appurtenances thereto in anywise belonging—for and during the period of time hereinabove mentioned and granted," and following this was a warranty of the rights conveyed.

The defendant is the appellant The Tyler County Lumber Company, and this concern is a partnership of which Rouse and Bate are the members. Bradshaw and Windham entered into negotiations with the defendant to sell to defendant the property conveyed to them by the plaintiff's deed; but the defendant's lawyer refused to approve this sale to the defendant until Bradshaw and Windham procured from the plaintiff the following letter from him to them dated May 31, 1949:

"Messrs. Minor Bradshaw and Wyman Windham Sr.
Livingston, Texas

"Gentlemen:

"Hertofore on or about May 6, 1949, I delivered to you a timber deed on approximately 1020 acres of land in the R.A. Irion League and in said timber deed it was expressly provided that you should cut over the area described in said deed only one time in a continuous operation.

"Confirming telephone call with Mr. Windham on this date, it is agreeable to me for you or your assignees or grantees to cut pole timber first and then cut sawstock timber provided that after you cut the pole timber you commence cutting the sawstock timber within ninety days. Such cutting will be considered a continuous operation within the provisions of said timber deed.

"Very truly yours,
/s/ C. I. Withers"

When this letter was delivered to him, the defendant's lawyer approved the sale to the defendant and paid to Bradshaw and

Windham the purchase price agreed upon between defendant and them, and Bradshaw and Windham delivered to him a deed by them to the defendant. The provisions of their deed to the defendant were identical with those of the plaintiff's deed to them except for differences necessarily caused by the difference in parties. The 5-year period within which the right to cut and remove the timber ran from the date of the plaintiff's deed, and the reversion at the end of this period was made to the plaintiff, his heirs, etc.

The deed of Bradshaw and Windham to the defendant was dated May 21, 1949, 10 days prior to the date of the plaintiff's letter quoted above, but the letter and the deed were delivered to the defendant's lawyer at the same time and were parts of the same transaction. This transaction, that is, the delivery of the deed and letter and the payment of the purchase price occurred on June 1, 1949.

The evidence does not show what Bradshaw and Windham paid the plaintiff for the latter's deed, nor what the defendant paid them for theirs; but the consideration must have been substantial and was fully paid in both cases. The deeds show that payment was in full, in advance, and Windham said that the defendant's lawyer paid him when he delivered the plaintiff's letter to the defendant's lawyer.

The plaintiff Withers received no consideration for his letter to Bradshaw and Windham—except such consideration as may be involved in the provisions of the letter or incidental to its delivery and acceptance.

In June, 1949, very soon after the defendant completed the purchase from Bradshaw and Windham, the defendant began to cut and remove the timber and continued to do so until the defendant's mill at Warren was closed. Following this, Ogden Coats, who had managed this mill for the defendant, leased a small mill, put it on the land, cut timber on the land and sawed it into lumber at this mill and sold this lumber to the defendant. He did this for about a month and then stopped his mill. He then carried timber to the mill of another person but stopped this about Christmas, 1949; and since that time there have been no other operations on the land. Coats acted under an agreement between him and the defendant, and his conduct represents a means whereby defendant attempted to utilize the timber on the land.

There was much rain during the period when these various operations were conducted on the land, and this bad weather caused the defendant to close the mill at Warren and eventually forced the stoppage of the operations on the land. There is evidence, however, that in the Spring of 1950 the weather became dry (there is some evidence to the contrary) and that logging operations could have been conducted on the land throughout the rest of the year.

Some parts of the land were cut over but the entire tract was not cut over completely. A plat, based on a cruise made of the land, is in evidence which shows areas cut over, and there is also evidence that a small area along a road in the southernmost part of the land, indicated on the plat by a red line, was also cut over. However, taking this evidence as an amendment of the plat, the plat shows large areas of the land on which no timber has been cut; and the estimate made by Norman Coats, dated July 25, 1950, about seven months after operations ended on the land, shows that almost two million feet of pine timber and more than a half a million feet of hardwood timber remains standing in these areas. Before the defendant's purchase the timber had been estimated at 3,800,000 feet. Plaintiff Withers gave some evidence in general terms which seems not necessarily to be inconsistent with that plat. Some of Mr. Withers' testimony seems to be consistent with the plat; his testimony does not, at any rate, show that the entire tract had been completely cut over, nor does it conflict with Norman Coats' estimate of the amount of timber remaining on the areas which had not been cut over.

On the other hand, the parts of the land shown on plat as cut over are at several, separated places on the tract. One of these

areas is in the northwestern part, and others are in the north-central part, the central and the southern parts.

There is testimony by Ogden Coats (and none to the contrary) that the bad weather had determined what parts of the land logging operations should be conducted on.

The only affirmative evidence concerning abandonment is that none was intended by the defendant. Thus Rouse, one of the members of the defendant partnership, said: "Q. You still expected within the five years to go back and cut and sell the timber, did you not? A. Yes, sir." However, the plaintiff claims no abandonment.

In February, 1951 the plaintiff Withers asked the defendant for a release of the defendant's deed, but the defendant refused to make this release and the plaintiff then brought this suit. The petition was filed on March 16, 1951.

The amended petition, on which the cause was tried alleges that the rights granted the defendant had terminated, and prays that the deed to the defendant be cancelled as a cloud on the plaintiff's title.

The cause was tried to the court with a jury. The trial court instructed the jury to return a verdict for the plaintiff and rendered judgment in plaintiff's behalf against the defendant as prayed for. The judgment also denied a cross-action by the defendant for damages.

From this judgment the defendant has appealed.

### Opinion.

The defendant's position is simply that the defendant had the full five years specified in Bradshaw and Windham's deed to the defendant in which to cut and remove the timber.

The plaintiff does not argue for a termination or a forfeiture of a right in existence, nor does the plaintiff claim an abandonment; his position is that the defendant's rights respecting the timber have expired. One ground seems to be that the land had in fact been cut over completely

one time, but the evidence shows as a matter of law that this had not occurred. Another ground is that the deed was amended by plaintiff's letter to Bradshaw and Windham and that the two documents required the felling of timber to be continuous once it had begun. The proof showed as a matter of law that such a requirement could not be met. The plaintiff seemingly argues that this requirement of a continuous felling of timber was a limitation on the defendant's rights, terminating the defendant's rights automatically when the operations on the land stopped in December, 1949.

We assume, without deciding one way or the other, that the deed and letter did require the defendant to fell timber continuously once the defendant began to do so. The question then is, was this requirement a limitation upon the defendant's rights, or a condition on which these rights depended? We hold that it was neither for these reasons:

(1) The deed and letter do not specifically provide for a reversion or a termination of the defendant's rights if the cutting of timber should not be continuous; this reversion or termination must be implied. Yet the parties did expressly provide for a reversion at the end of the five years and also provided for a release when the defendant "shall have completed their timber cutting operations over the entire tract of land" and removed their equipment.

(2) The implication of a reversion for a discontinuous cutting conflicts with the provision that the defendant "shall have and they are hereby granted five (5) years from May 6, 1949 within which to cut and remove said timber from said land, and any and all of such timber not having been cut and removed therefrom within such time shall revert" to plaintiff, conflicts with the provision that the defendant shall give the plaintiff a release when defendant "shall have completed their timber cutting operations over the entire tract of land," and conflicts with this part of the habendum clause: "to have and to hold the above described timber—for and during the peri-

od of time hereinabove mentioned and granted."

(3) It is not necessary to construe the requirement of continuous felling as a limitation or as a condition; it could have other consequences.

(4) We see no reason why a continuous cutting should be so valuable to the plaintiff that he might be expected to make the existence of the defendant's rights wholly depend upon it. For these rights were valuable and the defendant had paid the purchase price in advance; the defendant would lose valuable property if the defendant's rights were limited upon, or were conditioned upon, a continuous cutting of timber. The effect upon the defendant would be the same as a forfeiture. Yet performance of the requirement by the defendant could not have been intended by the plaintiff as a means of clearing the defendant's rights from his land. The defendant had the right to delay cutting until the last months of the fifth year, and even a continuous cutting once begun might be either slow or fast, with a small crew or a large one. The land itself was not shown to have any value or use except for timber, and it was not shown that plaintiff had any other use for it in mind.

 Our conclusion is that if the deed to the defendant was amended by the plaintiff's letter and if the defendant was obligated by deed and letter to fell timber continuously once this began, all as the plaintiff says, nevertheless the requirement was not a limitation upon the defendant's rights or a condition on which those rights depended; and those rights did not expire automatically when operations on the land stopped in December, 1949 and did not come to an end because the plaintiff demanded a release or because he filed this suit.

This conclusion requires that the judgment of the trial court be reversed; and under the petition and under plaintiff's arguments in this court, there is no reason why the cause should be remanded. Nor does the trial court's denial of the defend-

ant's cross action require a remand; the defendant asks no relief concerning this cross action.

The defendant's answer prayed that the five years granted by Bradshaw and Windham's deed to the defendant be extended by the period of time which this litigation will consume. The plaintiff does not oppose this request—if the defendant's rights have not expired—and the request (which has been repeated in this court) will be granted.

The judgment of the trial court is therefore reversed, and judgment is here rendered in behalf of the defendant against the plaintiff, first, that plaintiff take nothing against the defendant and second, that the five years granted the defendant for cutting and removing timber on the land be extended by the period of time from the date on which the plaintiff's original petition was filed to the date when the judgment of this court may become final.