C. I. WITHERS et al., Appellants,

v.

TYLER COUNTY LUMBER COMPANY
et al., Appellees.

No. 6275.

Court of Civil Appeals of Texas.
Beaumont.

June 11, 1959.

Rehearing Denied July 1, 1959.

Vinson, Elkins, Weems & Searls, Houston, Fred White, Port Arthur, for appellants.

Allen & Allen, Houston, for appellees.

McNEILL, Justice.

The action is one for damages on account of the alleged wrongful cutting and removing timber from a tract of 1,020 acres in the R. A. Irion League situated in Polk, Hardin, and Liberty Counties, a part of the factual background for which is described in the connected case of Tyler County Lumber Co. v. Withers, Tex.Civ. App., decided by this court in 260 S.W.2d 896. The present suit was instituted by C. C. Rouse and Thomas J. Bate, individually and as partners composing the firm of Tyler County Lumber Company, as plaintiffs who are now appellees, against C. I. Withers and J. W. Kelley, as defendants who are now appellants. The petition alleged that plaintiffs were the owners of timber on said tract through purchase from Minor Bradshaw and Wyman Windham, Sr., who in turn had bought the timber from appellant C. I. Withers, owner of the tract. The timber deeds in both sales had identical provisions and provided that the timber should be removed within a period of five years, and that only one cutting would be allowed. In accordance therewith appellees alleged that they undertook to cut and remove the timber during the summer and fall of 1949, but after cutting a considerable part of the tract the weather

became so bad in the late fall that cutting had to be discontinued, leaving still standing 1,900,000 feet of pine timber. The petition further alleged that before the timber cutting was resumed defendant C. I. Withers instituted suit against appellees as defendants in Cause No. 726 in the district court of Polk County to cancel the rights under the timber transfers to appellees and to remove same as a cloud upon his title, and that upon trial of this cause the district court, on May 13, 1952, instructed a verdict in favor of plaintiff Withers, an appellant here, thereby canceling the rights of appellees in and to said timber; that appellees appealed to this court and the district court's judgment was reversed in 260 S.W.2d 896, and writ of error denied. Appellees' petition further alleged that while Cause No. 726 was on appeal appellant C. I. Withers, through his agent or contractor, J. W. Kelley, secretly, fraudulently and knowingly went on the tract and cut and converted to his own use and benefit 761,102 feet of the largest and best pine timber on the tract which was the property of appellees; that such action by the appellants were not done in good faith and that appellants were therefore liable for the manufactured value of the timber or in the alternative for the value of the timber at the time it was disposed of by them.

Appellant Withers answered, denying that any timber was cut off the land except some beetle infected and dead timber which he had J. W. Kelley remove, and that he acted in good faith in selling said timber, believing that he was the sole owner thereof, and that appellees had failed to suspend the operation of the judgment in Cause No. 726 by filing a supersedeas bond and that he was therefore not liable, at most, for more than the stumpage value of the timber removed which would not exceed $25 per thousand. In addition, appellant Withers filed cross-action against appellees and made Harold Allison, who later became a partner in the Tyler County Lumber Company in the place of Thomas J. Bate and certain other parties having to do with the timber, not necessary here to set out, parties defendant in the cross-action. The cross-action alleged that contrary to the provision in the timber deed from Withers for the timber that there should be only one cutting, cross-defendants (appellees) unlawfully went upon said premises and cut a second time over the same areas which had been cut by them in the summer and fall of 1949, and removed therefrom pine timber in excess of 859,457 feet and hardwood timber in excess of 310,000 feet and converted same to their own use.

Appellant J. W. Kelley filed answer to the suit of appellees in which he denied any wrongdoing, that he was merely an employee of the said Withers, that he did not know of the claim of the appellees in and to said timber nor that title to the timber was in litigation, and that he acted in good faith believing Withers to be the owner thereof. The cause was tried to a jury before whom much testimony was heard. At the conclusion of the trial and in response to the court's charge the jury found in answer to Issue No. 1 that C. I. Withers in 1952 authorized the cutting and removal by J. W. Kelley of the pine timber from areas of the tract which had not been previously cut by Tyler County Lumber Company; in answer to Issue No. 2 said J. W. Kelley did cut and remove such pine timber and in response to Issue No. 3 the said J. W. Kelley was acting as an employee of C. I. Withers; in answer to Issue No. 5 C. I. Withers, in authorizing Kelley to cut and remove the pine timber, was not acting in good faith under a bona fide belief that he had a right to do such act; in answer to Issue No. 6 said Kelley did not act in good faith under similar circumstances; and in answer to Issue No. 7 the said Kelley cut and removed 691,911 feet from that part of the tract not previously cut over. In answer to Special Issue No. 9 the jury found the market value of the pine logs delivered at the mill to be $60 per thousand. In answer to Special Issue No. 9-a the jury found that the market

value of the lumber manufactured from the pine timber cut by Kelley was $120 per thousand. The jury also, in answer to other special issues, found that neither the appellees nor their agents and employees had cut and removed any pine timber from any part of the tract which had been previously cut over and likewise absolved them from liability. Upon this verdict the district court rendered judgment against appellants jointly and severally in favor of appellees for the manufactured value of the timber in the sum of $83,029.20, and provided further that J. W. Kelley recover of C. I. Withers one-half of any amount that he, J. W. Kelley, may pay in satisfaction of the judgment and rendered judgment that appellants take nothing by their cross-action.

Appellants assail this verdict and the judgment rendered thereon upon several grounds. First, it is contended under Point 4 that an instructed verdict should have been given the appellants at the conclusion of all the evidence or that their motion for judgment non obstante veredicto under Point 5 should have been sustained; and that under Point 3 the evidence was insufficient to support the jury's findings on the issues submitted. Under their first point they say that the answer of the jury to the issues above summarized were against the great weight of the evidence and were manifestly wrong and unjust. Other points of error will be noted later herein, but since the ones just mentioned in one way or another attack the sufficiency of the evidence we will briefly summarize the proof made.

Witnesses for appellees were S. T. Coats and son, Norman A. Coats. S. T. Coats, the father, testified that he was a timber estimator, that he had been in the business for many years in east Texas; that he and his son, Norman A. Coats, operated the business of S. T. Coats & Son, timber estimators and investigators. S. T. Coats testified that he made a timber cruise of the tract in 1949 and at that time he estimated that there was 3,800,000 feet of pine

timber thereon; in 1950 he made a cruise of the tract and estimated that the amount of uncut pine timber left standing after appellees had to quit on account of bad weather in the fall of 1949 was 1,900,000 feet. He stated that his 1949 estimate was made on his own account as he and his son had considered buying this timber; that the cruise he made in 1950 was done at the request of Tyler County Lumber Company. He testified that that part of the area which had been cut by the Tyler County Lumber Company in the fall of 1949 was cut clean. He further testified that he and his son were requested to check the timber that had been cut on the premises in the summer and fall of 1952 and spring of 1953, after the cutting by appellants had ended and that his son conducted the field work in connection with estimating the timber cut on the uncut areas existing at the end of the 1949 cutting. Their report showed that 2,622 stumps of trees had been counted in these areas and that by calipering they concluded that a total of 691,911 feet of pine timber had been cut and removed from the uncut areas belonging to Tyler County Lumber Company. The witness Norman A. Coats testified to substantially the same evidence. He spent a considerable amount of time in the field and did most of the field work and that his father did most of the office work in calculating.

Appellee C. C. Rouse testified that he and Tom J. Bate were the owners of the Tyler County Lumber Company and as such owned and operated a sawmill at Warren, and that they had cut through the fall of 1949 about 1,900,000 feet of timber off of the tract but had to quit on account of bad weather. He further stated that when they went back and cut the balance of the timber remaining on the tract in 1954 and 1955, that Harold Allison had become his partner in the sawmill business but that he and Tom Bate still owned the timber cut. He further testified that at the time the district court granted Withers an instructed verdict in Cause No. 726 there was

a gentlemen's agreement made between his lawyer, Fox Campbell, and Withers' lawyer, Sam Croom, that there would not be any timber cutting on the tract while the case was pending on appeal. In addition, appellees offered portions of the deposition of appellants J. W. Kelley and C. I. Withers. It was shown by Kelley's deposition that he acted as an employee of Withers, that their dealings with each other were not in writing, and that he made no investigation of the title to the timber and that Mr. Withers showed him where to cut, that all the timber cut from the tract was either beetle infested or damaged by fire, and that he cut this type of timber throughout the entire tract. He testified that he took this timber to the Leggett Lumber Company and that since Mr. Withers had instructed the Leggett Lumber Company to pay him for the timber delivered he (Kelley) collected for it. He further stated that he knew nothing of the suit between Withers and others about the timber. Mr. Withers, in his deposition, stated that his contract with Kelley was oral and that Kelley paid him in cash for the value of the timber cut off the tract, which he said Kelley told him was 150,000 feet.

Appellees' witness, Norman G. Atchley, testified that he was a partner in the Leggett Lumber Company, and that he bought the logs from Kelley from a tract which he stated to be the Romayor tract, that there was no statement made by Mr. Kelley that he was going to bring in only beetle infested timber, he said all he and his company knew was that the logs came from land Mr. Withers owned, that they paid $60 per thousand for the logs and that it was a little above the average timber. Appellees called C. I. Withers as an adverse party, who testified that he never heard any agreement made between Fox Campbell and Sam Croom about not cutting any timber during appeal of the previous case. He further stated that he only employed Kelley to salvage the beetle infested and damaged timber on the tract, that he never talked to Leggett Lumber Company about

any timber off of the 1,020 acre tract—only from the Romayor League. He stated that he told Kelley to salvage what he could from the timber and pay him (Withers) $10 per thousand. He admitted that in his first amended original answer he tendered to appellees $25 per thousand for 150,000 feet of timber cut from the land by Kelley. However, he personally did not know anything about the filing of the tender. He stated that he sold this timber to Kelley and kept no separate records of the timber that was cut from this tract from the sales of timber made from the Romayor League tract; in fact, Leggett Lumber Company would make checks for timber delivered payable to J. W. Kelley, who would cash the checks and every two or three weeks he and Withers would meet and make a settlement in cash between them.

The defendant in the cross-action, Harold Allison, by deposition testified that he became associated as a partner with Mr. Rouse in the Tyler County Lumber Company about July, 1954, and that they employed William J. (Shorty) Haynes to cut the remaining timber on the tract, beginning in August, 1954. He stated that the part which had been cut by the Tyler County Lumber Company in 1949 was cut clean and one could tell where the lines were between the cut and the uncut parts; when he was on the tract in August, 1954, the uncut areas left by the cutting in 1949 had been cut through and the largest timber and some poles had been cut. He stated that the Tyler County Lumber Company cut the remaining pine timber in 1954 and 1955, but did not cut any hardwood and that they did not cut in any area which had already been cut over; that he had never seen any beetle infested timber on this tract. Shorty Haynes, a witness for appellees, testified that he was on this tract the first time in August, 1954, when Mr. S. T. Coats showed him the lines. He moved his sawmill on the tract and cut timber from all uncut areas, that he cut from only uncut areas but he cut over the entire tract. He was

on the land for about a year cutting and he stated they cut about 700,000 feet of pine timber in this operation. He hauled most of it to the Tyler County Lumber Company sawmill at Warren and was paid $35 per thousand by that company for his work.

The testimony for the defendants may be summarized as follows: Allen Ross Hightower, attorney for Mr. Withers in the prior suit, stated that he had not heard of any agreement being made about not cutting timber during the appeal and Mr. Sam Croom, who also represented Mr. Withers in the previous suit, testified there was no agreement whatsoever that nobody would cut timber during the appeal; in the early fall of 1952 Mr. Withers asked him whether he had a right to cut beetle infested timber on the tract and he told him that he could but would be liable for stumpage on uncut areas. Mr. Croom testified that he was in the courtroom when Judge Coker instructed a verdict for Mr. Withers in the prior case and he heard Mr. Campbell give notice of appeal, and knew the case would be appealed. Mr. Withers testified that the tract of 1,020 acres had a good stand of pine timber in 1949 and totaled about 2,000,000 feet. He went on the land Christmas Day, 1949, and stated that some parts of the land were cut clean and other places were not cut clean. He stated that he went back and rechecked the land in January, 1950, and the only uncut parts he found in 1950 were two small areas in the northwest corner. He was next there in 1952 with Mr. Kelley. He stated that he employed Kelley to cut and salvage the beetle infested and damaged timber only and agreed to pay him $10 per thousand for it. He stated that he had also sold a considerable amount of timber on the Romayor tract to Kelley at $15 per thousand and when he was paid by Kelley he lumped the sums and credited all collections to the Romayor tract. He further stated that he was never on the 1,020 acre tract while Kelley was cutting except one time at the south end when the cutting was taking place at the north end. He further stated that he did not recall talking to Sam Croom about cutting the beetle timber. The next time he stated he was on the tract was in the summer of 1954. He stated then the Tyler County Lumber Company was cutting timber all over the tract where they could find anything to cut. At the time he made the deal with Kelley he thought he owned the timber and felt that the cutting of beetle damaged timber was necessary to preserve it. He also stated that his lawyer said that appellees expected to appeal the other case and that he knew that they had to prepare their brief and the appeal bond was filed by appellees. He stated he told Atchley, who was connected with Leggett Lumber Company, that Kelley might come there with logs and if he did to deal with him. He further stated that he did not recall whether he told Kelley about any pending suit or not.

S. L. McAdams, a timber estimator, testifying for the defendants stated that he made a timber estimate of the 1,020 acre tract in 1948 for the Texas Longleaf Lumber Company, that at that time he estimated there were 2,978,521 feet of timber, including hardwood, on the tract. The next time he was on the tract was in August, 1955, when he was employed by C. I. Withers to make an estimate of the timber which had been cut in the years 1954–1955. He was accompanied by W. W. Talbert, a consulting forester from Lufkin. They made a joint timber stump scale which took them about 10 days during which time the witness Creighton Pugh also assisted. They found stumps that were five or six years of age and stumps that were some two or three years of age. McAdams stated that the stumps showing the old cuttings were over the entire tract, except two small areas, one of about 5 or 6 acres and another of 25 or 30 acres. According to their calculations they estimated that 826,548 feet of pine timber was cut during the years 1954 and 1955, and that they found these cuttings over the entire tract. The witness W. W. Talbert testified to substantially the same facts. Mr. McAdams was recalled

and testified that pictures had been made of the cutover land, that Creighton Pugh used Mr. Withers' picture machine and took the pictures or slides. These pictures were shown to the jury in the trial of the case. Mr. Pugh testified that he and Withers were good friends, had many business dealings together, in fact they were very close in a business and social way and much of the time recently had lived at the same house and split the expenses of maintaining same.

A. L. Reaves, witness for plaintiffs in rebuttal, testified that he was District Clerk at the time the instructed verdict was given Mr. Withers in the earlier suit and that after the trial was over and while the attorneys for the parties were still in the courtroom he stated Mr. Fox Campbell asked that there be no timber cut on this tract of land pending the appeal of the case, and that Mr. Sam Croom, to whom this was addressed, agreed to this. He stated that he did not know whether Mr. Withers heard this agreement, nor any other person except the two attorneys and himself.

■■ The above summary of the testimony, while not entirely comprehensive, is thought sufficient to show the nature of the proof of the parties and their positions as to the evidence. The record is voluminous with many exhibits which tend to support the testimony of the various witnesses making them. The evidence is sharply conflicting and we are unable to say the verdict does not have sufficient support, except as to the finding under Special Issue No. 6, that appellant Kelley did not act in good faith. He testified he was acting only as an employee of Withers and that he knew nothing of the contest over title to the timber. The only item that may be said to raise any suspicion that he knew or should have known of the controversy was that all his dealing with Withers was by word of mouth and all money transfers were in cash and over a period of several months. This, we think, as to Kelley cre-

ates surmise or conjecture and no more. But this, when added to other circumstances outlined above, is sufficient to convict appellant Withers, as the jury found, of bad faith. "Good faith" is generally held to be one of fact and we hold it to be so as to Withers. While he had recovered judgment in the district court, yet he knew that appellees had in that suit given notice of appeal and intended to pursue it. The res, therefore, was still in litigation. Under these circumstances whether a prudent person, acting upon reasonable grounds and in good faith, would have cut timber the subject of litigation, was one for the jury. Gaither v. Hanrick, 69 Tex. 92, 6 S.W. 619; S. H. Whitley & Sons v. Haney, Tex.Civ.App., 15 S.W.2d 66; Cage Bros. v. Whiteman, Tex.Civ.App., 153 S.W. 2d 727(8). See for discussions of the question, 12 Tex.Law Review 210; 20 Tex. Law Review 498.

It is proper at this juncture to discuss a point somewhat connected with the "good faith" issue.

■ Appellants assert that since their proof shows only 150,000 feet of beetle infested or damaged timber was cut by them in 1952 and 1953 from the 1,020 acre tract and appellees' proof shows 691,911 feet cut off during this time and there was no direct evidence that indicated who cut the amount represented by the difference in these figures, and no evidence indicating no third party had done the cutting, that the finding of the jury that appellants had cut 691,911 feet was without support. It is true that there was no direct testimony showing that appellants had cut the larger sum but we think the circumstances indicating they did are strong. In the first place the testimony of appellants is not clear and convincing. They stated only inferior damaged timber was cut, when the testimony of Mr. Atchley, who bought the timber, stated it was above average timber and he noticed no beetle infected logs. Appellant Kelley stated he cut timber throughout the entire tract. This is what was

found to be the case by Coats & Son in their 1954 checking. Then, too, appellants, especially Withers, in failing to keep any books or written records on the timber cut and attempting to bring in in the total timber cut, cuttings from the Romayor League and Withers giving credit for the entire cuttings to the Romayor tract in his income tax return all indicated an attempt to conceal their cutting on the 1,020 acre tract. While Withers stated he was on this tract only one time during Kelley's cutting, yet he was in the area and no doubt would have learned of any third party's activity or attempt at cutting this timber. When all this is considered with the further fact that the timber was the subject of litigation and no final judgment had been rendered therefor, the jury was warranted in making the finding complained of.

■ Appellants in their second point urge that they are not liable for the manufactured value of the timber and the trial court erred in so holding. This point is well taken; there was error in assessing the manufactured value of the timber against appellants. There was no proof that the timber was made into lumber, except that the logs were delivered to a sawmill. But whether on this there may be an inference that the timber delivered totaling 691,911 feet was made into lumber is immaterial, when the timber was delivered and sold to the mill appellants had no further connection therewith. The right of recovery against a person who cuts and removes another's timber is grounded in the law of trover and conversion. Where the cutting is mistakenly done by a person who upon reasonable grounds believes he has the right to do so, the conversion is completed when the trees are cut and he is liable only for stumpage value. But where a person acting in bad faith cuts another's timber, and increases its value by labor and money spent on it, there is a continuing act of conversion, or different stages thereof, and the owner may elect at what point he will hold the wrongdoer and in such case there is no offset for such labor

or increase in value. Brown v. Pope, 27 Tex.Civ.App. 225, 65 S.W. 42; Ripy v. Less, 55 Tex.Civ.App. 492, 118 S.W. 1084; Louis Werner Stave Co. v. Pickering, 55 Tex.Civ.App. 632, 119 S.W. 333. However, the wrongdoer may be held for the highest value only while the article is still in his possession or control, and not for a still higher value that an innocent third person who purchases from the wrongdoer may bring about. Ripy v. Less, supra.

■ In his 6th point appellant Withers urges that the trial court should have granted his motion for a mistrial because of the erroneous admission of testimony that his general reputation for honesty and fair dealings was bad, and in his 7th point that the court should have stricken the testimony that his character and reputation as to honesty and fair dealings with others was bad. Near the end of the trial three different witnesses for appellees testified that the reputation of appellant Withers in the community where he resided or where best known for honesty and fair dealing and for truth and veracity was bad. In most instances there were separate questions dealing with his reputation as to honesty and fair dealing from those dealing with his reputation as to truth and veracity. No complaint is made as to the testimony of the witnesses that Withers' reputation for truth and veracity was bad. Only one material objection was made and that to one question addressed to the witness Oscar Munson when asked about Withers' reputation for honesty and fair dealing, and then the objection was "we object to this line of questioning. This is not a test and these questions have no place in the record." When the objection was made counsel for appellees stated, "I'll start over". A similar question was then addressed inquiring of his reputation for honesty and fair dealing to which the witness answered "It is bad". We are inclined to the view that this evidence was inadmissible. McCormick & Ray, Texas Evidence, Vol. 2, sec. 1495, p. 342. But no objection was urged to this second question, nor to those

of a similar nature addressed to the other two witnesses, in fact, appellant Withers cross-examined these witnesses as to such testimony. Objections to admissions of evidence must usually be made promptly and be specific and there is no reason for exception in this case. McCormick & Ray, Texas Evidence, Vol. 1, secs. 23 and 24, pp. 21, 22. The motion for mistrial urging this matter was filed over three months after judgment. If it was presented to the court earlier, no bill of exception shows this. It came too late.

■ Appellants' 8th point asserts that the trial court erred in allowing the witness, S. T. Coats, to testify to the scaling of stumps in 1954 when the evidence showed he did none, or very little of the field work. The testimony of each of the persons in charge of the field work for each side gave figures and totals of work done by all parties helping in the work, and testified that his work was accurate and verified the figures. And the testimony of Norman A. Coats, who was in charge of the field work for S. T. Coats, verified his work and the sum of timber scaled. We think therefore if there was error in allowing S. T. Coats to testify as to these figures, it was harmless.

■ The above disposes of all points urged. There remains only to be considered the proper judgment that should be rendered. The judgment as against appellant Withers should be reformed to be based upon the market value of the logs delivered to the mill which the jury found to be $60 per thousand feet. Since we have held that the evidence did not convict appellant Kelley of bad faith he is liable for only stumpage value which the jury placed at $35 per thousand feet. And since he was found to have been Withers' employee he is entitled to full indemnity over against Withers for any sum under the judgment he may have to pay. Oats v. Dublin Nat'l Bank, 127 Tex. 2, 90 S.W.2d 824(15). It is therefore our judgment that appellees, C. C. Rouse and Thomas J. Bate, recover

of and from appellants Withers and Kelley, jointly and severally the sum of $24,216.88 and that appellees recover of and from appellant Withers the additional sum of $17,-297.72, said sums to bear interest at the rate of 6 percent per annum from June 11, 1958, and all costs in the trial court, and that appellant Kelley do have and recover of and from appellant Withers any amount that appellant Kelley or his estate may pay in satisfaction of the judgment against him and that the parties have their execution. Otherwise, the trial court's judgment is affirmed.

Reformed and affirmed.