Cletys C. SADLER, et ux., Jeannette Williams Sadler and Philip M. Sadler, et ux., Jacquelyn Sadler, Appellants,

v.

Suzanne Mann DUVALL, Appellee.

No. 6–90–075–CV.

Court of Appeals of Texas, Texarkana.

July 16, 1991.

Gregory D. Smith, Ramey, Flock, Jeffus, Crawford, Harper, Tyler, Earl Roberts, Jr., Roberts, Hill & Calk, Longview, for appellants.

H. Wayne Meachum, Dallas, John W. Alexander, Winnsboro, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Cletys Sadler, Jeannette Williams Sadler, Philip M. Sadler, and Jacquelyn Sadler appeal from a judgment awarding damages to Suzanne Duvall for damages caused by ouster and the concomitant conversion of timber located on the real estate in which she claimed ownership.

The Sadlers contend that the trial court erred in awarding damages because there were no findings made on any tort claim that could support the liability award. They also contend that the court used an improper measure of damages and erroneously awarded attorney's fees and prejudgment interest.

This suit began as an action by Duvall to remove a cloud from the title of realty, but later changed into an action to recover profits from the sale of timber on the property and associated damage to the land. The Sadlers came into possession of the entire tract of land, consisting of 755 acres, under a special warranty deed from Bankers Life and Casualty Company dated May 6, 1976. The Sadlers intervened in the pending lawsuit and adopted the position of their predecessor-in-title claiming ownership of the entire tract of land and denying any ownership interest by Duvall. Afterward, the Sadlers sold timber from the property for $86,243.03.

The title problem was severed from this action and was resolved in 1982 with a judicial determination that Duvall owned a one-fourth interest in the property. The damage claims were tried to the court in 1984. An appeal followed, which resulted in reversal and remand for a new trial. *Duvall v. Sadler*, 711 S.W.2d 369 (Tex. App.—Texarkana 1986, writ ref'd n.r.e.) (opinion by Chadick, J.).

Upon retrial, the jury found in Duvall's favor on some issues, and the court rendered a judgment that partitioned the property in kind and awarded damages to Duvall consisting of the manufactured value of the cut timber, the diminution in value of the land resulting from the logging, the cost of restoring a log cabin, and attorney's fees for clearing the cloud on title. Prejudgment interest was awarded on all recoveries.

The Sadlers contend in their first ten points of error that damages were improperly awarded because there were no jury findings about the underlying torts that allegedly caused the damages. The judgment states that:

(3) The Defendants committed ouster against Plaintiff as a matter of law between May 6, 1976 and October 5, 1982; that Plaintiff is entitled to damages and judgment therefor against Defendants in the amount of $13,275.65, the same being twenty-five percent (25%) of the rental value of the subject farm land during the period of ouster; that Plaintiff is entitled to prejudgment interest thereon; that the full amount of said damages *for ouster and interest thereon has been paid and satisfied by Defendants and that Plaintiff is entitled to no addition (sic) award therefor;* . . . .

(Emphasis added.)

When a judgment debtor voluntarily pays a judgment rendered against him, he waives his right to appeal on the underlying basis of liability. *Elkins v. Vincik*, 437 S.W.2d 49 (Tex.Civ.App.—Austin 1969, no writ). According to the above

provision of the judgment, the Sadlers voluntarily paid the award based upon their ouster of Duvall. Thus, they cannot now complain about any matters predicated on ouster. The trial court did not err by basing its judgment in the present case upon ouster.

■■■ *Ouster* is defined as a wrongful dispossession or exclusion of a party from real property. It is a notorious and unequivocal act by which one cotenant deprives another of right to common and equal possession and enjoyment of property. *Alexander v. Kennedy*, 19 Tex. 488, 493 (1857); BLACK'S LAW DICTIONARY 1101 (6th ed. 1990). When a party procures title that purports to convey the entire title to the land upon which a cotenancy exists, such a conveyance constitutes ouster and amounts to disseizin of the nonparticipating cotenant. *Beets v. Hickok*, 701 S.W.2d 281, 284 (Tex.App.—Tyler 1985, no writ).

■■■ The term *conversion* was not mentioned in the judgment. Conversion is defined as any unauthorized act which deprives an owner of his property permanently or for an indefinite time. BLACK'S LAW DICTIONARY 332 (6th ed. 1990). The Sadlers argue that conversion should have been submitted to the jury, but since it was not, no such finding can be deemed or otherwise made. Where the evidence is clear and undisputed, there are no contested facts for the jury to resolve, and no submission is necessary. *Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex.1971); TEX.R.CIV.P. 277, 279.

The stipulations showed that Duvall owned one-fourth of the property and that the Sadlers knew of, but denied her claim, and that the Sadlers sold all of the merchantable timber off the land in 1976 and 1977 without accounting for the proceeds to Duvall.

■■■ Although the trial court has the power to modify or set aside a stipulation, if it is not set aside, it is conclusive as to the facts stipulated and all matters necessarily included therein. A stipulation will be observed and the reviewing court is bound thereby. *State Bar of Texas v. Grossenbacher*, 781 S.W.2d 736 (Tex. App.—San Antonio 1989, no writ); *Geo-Western Petroleum Development v. Mitchell*, 717 S.W.2d 734 (Tex.App.—Waco 1986, no writ); *Amoco Production Co. v. Texas Electric Service Co.*, 614 S.W.2d 194 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ); *Handelman v. Handelman*, 608 S.W.2d 298 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). In the present case, conversion of the proceeds from the timber is unquestionably shown by the stipulations. Thus, the trial court did not err by rendering judgment based upon this theory.

■■■ The Sadlers next argue that the measure of damages on the timber was improper. They first contend that the trial judge erred by ordering an accounting because Duvall did not pray for such relief in her seventh amended petition. However, Duvall did plead for partition, and an accounting is an incident of a partition suit. *Sayers v. Pyland*, 139 Tex. 57, 161 S.W.2d 769, 771–72 (1942).

■■■ The Sadlers also argue that there was no basis to obtain an accounting because Duvall failed to secure a jury finding about the amount of timber harvested. They suggest that her one-fourth interest might actually have been left in place, because the evidence showed that some trees were still on the property. However, Stipulation 10 and the referenced contract state that all marketable timber was sold. The stipulation is conclusive. Duvall was entitled to one-fourth of the marketable timber, and the sale by the Sadlers and their failure to account for the proceeds deprived Duvall of this property.

■■■ The Sadlers also argue under this point that the court applied an improper measure of damages when it applied the manufactured value of the lumber ($50,000, based on jury's finding) instead of the stumpage value ($21,560.75, based on jury's finding). The rule to be employed when deciding what measure of damage should be utilized is set out in *Kirby Lum-*

*ber Co. v. Temple Lumber Co.*, 125 Tex. 284, 83 S.W.2d 638 (1935):

> The doctrine of manufactured value is based upon the rule of law that a party whose property has been tortiously taken is entitled to it or its enhanced value until it has been so changed as to alter the title. Under such a rule it is held that the owner of timber may reclaim it when manufactured into lumber, crossties, shingles, etc.... Notwithstanding the above rule, manufactured value will not be applied in regard to timber cut and appropriated where the trespass is the result of inadvertence or mistake, or where the person committing the wrong acted in good faith, and without any intention of committing a wrongful act. Of course the act must not be in *reckless disregard* of the rights of the owner, but the act must be willful and the wrong intentional, or committed under such circumstances that the law will impute malice.

(Emphasis added.) Other cases in which the court addresses the proper measure of damages for timber cut are *Green v. Crawford*, 662 S.W.2d 123 (Tex.App.—Tyler 1983, writ ref'd n.r.e.); *Louisiana Pacific Corp. v. Smith*, 553 S.W.2d 771 (Tex.Civ. App.—Tyler 1977, no writ); *DeWitz v. Saner–Whiteman Lumber Co.*, 155 S.W. 980 (Tex.Civ.App.—Galveston 1913, no writ). In the absence of such circumstances, where the cotenant merely cuts and appropriates more than his share of the standing timber, only the stumpage value should be utilized. Texas courts draw a distinction between an intentional, willful or malicious act and good faith inadvertence. In several cases, the reason for the improper logging was a simple error on the part of a logger or owner in pointing out boundary lines. In *Kirby*, the jury was asked to find that the defendant acted in reckless disregard of the plaintiff's rights. In the present case, no issues or instructions concerning malice, recklessness, or bad faith were requested by counsel or submitted to the jury. When an issue is conclusively established as a matter of law, or when it can be answered as a matter of legal deduction from undisputed facts, the trial court need not submit a question on it to the jury. *Sullivan v. Barnett*, 471 S.W.2d at 44; *Transit Enterprises v. Addicks Tire & Auto Supply*, 725 S.W.2d 459 (Tex. App.—Houston [1st Dist.] 1987, no writ); Tex.R.Civ.P. 277. In order to establish that manufactured value was the proper measure of damage, Duvall had to prove so conclusively that the court could determine as a matter of law that the Sadlers acted intentionally, willfully or with malice. Malice is defined as ill will, bad or evil motive, or such gross indifference as will amount to a willful or wanton act. *Tribble & Stephens Co. v. Consolidated Services*, 744 S.W.2d 945, 953 (Tex.App.—San Antonio 1987, writ denied). The relevant inquiry is whether this question can be answered as a legal deduction from the stipulations and evidence.

There is ample undisputed evidence that shows that the Sadlers were aware of Duvall's claim to the property at the time the timber was sold. However, there is also a stipulation that "... until October 5, 1982, Defendants [the Sadlers] believed that they owned the entire farm land ... as sole owners." This stipulated a state of mind that is inconsistent with a malicious intent. In the *Kirby Lumber* case, the court held that, if the defendant acted fairly and honestly (but as later proven, mistakenly) *in the belief that he had a right to do what he did*, the defendant is liable only for its value at the time of the taking, *citing Texas & N.O.R. Co. v. Jones' Ex'rs*, 34 Tex.Civ.App. 94, 77 S.W. 955 (Tex.Civ. App.—Dallas 1903, no writ); *see also Cummer–Graham Co. v. Maddox*, 155 Tex. 284, 285 S.W.2d 932, 933 (1956).

■ Duvall urges that the belief was held under circumstances which constituted something other than good faith. Where the plaintiff attempts to recover punitive damages which require proof of such willful or malicious conduct, the plaintiff has the burden of showing such wrongful action. *M.C. Winters, Inc. v. Lawless*, 445 S.W.2d 761 (Tex.Civ.App.—Eastland 1969, writ ref'd n.r.e.).

The jury was submitted a jury question on exemplary damages. The jury was in-

structed that these damages were available only if the defendants acted willfully or intentionally or with a degree of gross negligence that indicated a conscious disregard for the rights of others. The jury was not asked whether exemplary damages were appropriate, but after this instruction, it was asked to find the amount of exemplary damages. The jury found the amount to be "None." This failure to find exemplary damages is not equivalent to an affirmative finding of good faith.

■ The burden was on Duvall to establish the Sadler's bad faith. The question of whether the timber is cut in bad faith is generally one for the jury. *See Withers v. Tyler County Lumber Co.*, 326 S.W.2d 173, 179 (Tex.Civ.App.—Beaumont 1959, writ ref'd n.r.e.). Duvall contends that the record shows as a matter of law that the Sadlers acted in bad faith. After reviewing the stipulations and evidence, we cannot agree, nor do we agree with Duvall's argument that this could be an implied finding of malice under Tex.R.Civ.P. 279, because there was not a cluster submission. Even if it fell under Rule 279, the evidence does not support the making of an implied finding of malice. The trial court, therefore, erred in using the manufactured value of the timber in calculating damages, and the judgment should be reformed to apply the stumpage value, which was also found by the jury.

■ Even if the Sadlers had acted in bad faith, there is authority holding that they could only be held liable for the highest value of the timber while the timber was in their own possession or under their control. Therefore, they could not be held liable for a higher value that might be created by an innocent third party who purchases and transforms the timber into some other form. *Withers v. Tyler County Lumber*, 326 S.W.2d at 180; *Ripy v. Less*, 55 Tex.Civ.App. 492, 118 S.W. 1084, 1086 (1909, no writ); *Texas & N. O. R. Co. v. Jones' Ex'rs*, 77 S.W. 955. The points of error are sustained.

■ The Sadlers next contend that the judgment provides duplicate recovery by awarding damages for diminution of the property value because of the timber cutting and also for the value of the timber. In Jury Question 7, the jury found that the value of the land was diminished in the amount of $115 per acre as the result of the cutting of the timber. The Sadlers point out that the jury's answers set the diminished value per acre at almost the same amount that was obtained per acre through the sale of the timber. The jury, however, was instructed not to consider the value of the cut timber itself in determining a diminished value.

The Sadlers argue that this necessarily constitutes a double recovery for the same damages. The jury was instructed not to consider the value of the cut timber on that issue.

We are required to harmonize jury findings whenever possible. *Luna v. Southern Pacific Transportation Co.*, 724 S.W.2d 383, 384 (Tex.1987). We have examined the record to determine what this finding of diminished value was based upon. We also looked at the summations to the jury to determine on what basis Duvall's attorney asked the jury for damages on this jury question. A pertinent portion of his argument is as follows:

Specific Question No. 6 deals with the issue of the diminished value in the land resulting from the clear cutting that occurred in 1976 and '77.... We brought Mrs. Louise Rogillio, a well-established and respected realtor here in Wood County, someone who has no commitment one way or the other to anyone in this lawsuit, someone who is totally objective. And she came in, and she said that in her opinion she had absolutely no qualms about saying if you go into an area and you clear cut the timber and you leave the stumps and you leave the remnants and you do nothing to improve the premises, that that act alone devalues the land by a minimum of $200.00 per acre. Just that act alone. That the wooded areas in Wood County have much more value than those that are cleared. She has many more prospects seeking to purchase that kind of land in Wood County than otherwise. With regard to the di-

minished value, I think the credible evidence—the credible testimony, that of Ms. Rogillio, is $200.00 per acre. And you've got to weigh that against Mr. D.L. Newsom, a friend of the Sadlers for some thirty something years. And, of course, he equivocated. He tried to make it conditioned upon where it was and how the land was to be used and this sort of thing, but he never said—he never contradicted Ms. Rogillio's opinion that, at a very minimum, this acreage, clear cut, with the stumps and remnants left, devalued it by at least $200.00 per acre.

Texas recognizes the value of trees for purposes other than the market value of the timber. Trees have an aesthetic value, sometimes referred to as their ornamental value, as well as a utility value for shade. *Cummer–Graham v. Maddox,* 285 S.W.2d at 936. This value is the difference in the value of the land before and after the cutting. Both the ornamental and utility value are part of the intrinsic value, and the jury rejected any diminution on that basis. Intrinsic value could have been awarded if it had exceeded the fair market value of the timber or was applied to trees that were destroyed but had no market value as timber. Duvall is not entitled to have payment for the trees plus the additional value of the land with the trees growing on it. Such an evaluation includes the potential value of the timber and would constitute a duplication of damage awards.

The jury also heard evidence and saw pictures of the condition of the land after the logging operation. A witness described the condition of the land as "having a great many piles of brush and logs." The presence of this debris left by the cutting of the timber could have been found to have diminished the value of the land. The consideration of this evidence by the jury was consistent with its instruction not to consider the value of the cut timber. When an injury to land is temporary, that is, able to be remedied at reasonable expense, the proper measure of damages is the cost of restoration to its condition immediately preceding the injury. However, in absence of proof that repair is actually or economically feasible, the injury may be deemed to be permanent. *Rocha v. U.S. Home/Homecraft Corp.,* 653 S.W.2d 53 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Fort Worth & Denver City Ry. Co. v. Muncy,* 31 S.W.2d 491 (Tex.Civ.App.—Amarillo 1930, writ ref'd n.r.e.); 28 TEX. JUR.3d *Damages* § 68 (1983). No such proof was adduced at trial to show that repair was actually or economically feasible, nor was the jury asked to make a determination thereon. When the damage is treated as being permanent, the measure of damages is the decrease in the value of the land. *Kraft v. Langford,* 565 S.W.2d 223 (Tex.1978).

The jury was also asked to determine whether the Sadlers committed waste, and the jury found that they had not. *Waste* was defined for the jury as "neglect, indifference and/or failure to maintain which has resulted in damage and/or injury to the property, including dwelling structures, lake, dam, spillway, road and/or any other improvements thereon or to the land itself between May 6, 1976 to October 5, 1982." This definition is directed specifically to acts of the Sadlers, and thus, the jury was not directed to acts of the timber company even though by contract the Sadlers could have required them to clean up after their logging operations. This award can be harmonized with the other jury findings by attributing it to the debris left on the land by the logging operation. We find this award does not constitute a duplication of damages. The point of error is overruled.

The Sadlers next contend that the trial court erred by providing a damage recovery of $13,000 for the restoration of a log cabin on the land. Stipulation 14 sets the value of the cabin at $27,000 in 1976, and at $5,000 in 1982, and states that the cost of restoration to its original condition would be $80,000.

The failure of a cotenant in possession to properly protect the common property amounts to an act of waste. *Guffey v. Stroud,* 16 S.W.2d 527 (Tex.Comm'n App. 1929, opinion adopted). The term *waste*

does not include ordinary depreciation of property due to age and use.

 The judgment is apparently based upon the answer to a jury question as to whether a reasonably prudent person would have restored the cabin. A cotenant has the duty to protect the common property and to preserve it, but he has no duty to restore it to its original condition or to some condition that may have existed prior to his taking possession. The term *restore* was not defined for the jury. The question of whether a prudent person would have restored the cabin does not authorize damages. The jury found that the Sadlers' inaction did not constitute waste. This point of error is sustained, and this damage recovery will be deleted from the judgment, along with the interest thereon.

 The Sadlers next contend that the trial court erred by awarding attorney's fees for services rendered to remove the cloud from Duvall's title and also that the court used an incorrect interest rate when computing prejudgment interest on the fees. In general, attorney's fees are not recoverable unless authorized either by statute or by contract. *New Amsterdam Casualty Co. v. Texas Industries, Inc.,* 414 S.W.2d 914 (Tex.1967); *Prudential Ins. Co. of America v. Burke,* 614 S.W.2d 847 (Tex.Civ.App.—Texarkana 1981), *writ ref'd n.r.e. per curiam,* 621 S.W.2d 596 (Tex. 1981). A cloud of title action does not fall under any of the statutory authorities. TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986).

 In *Walker v. Ruggles,* 540 S.W.2d 470, 476 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ), *overr. on other grounds, A.H. Belo Corp. v. Sanders,* 632 S.W.2d 145, 146 (Tex.1982), the court, while reviewing an action involving both slander on title and cloud on title, noted that the Supreme Court had adopted RESTATEMENT OF TORTS § 633 *comment d* (1938)[1] in setting out the proper measure of damages in slander of title cases.[2] The Houston court decided that, as the Supreme Court had expressly approved one part of the section, it could legitimately extend that holding. Accordingly, it applied Section 633(b) *comment i,* which provides that the expense of litigation should be recoverable for an action to "remove the cloud cast by the publication of disparaging matter upon the title to chattels or intangible things or upon the quality of land or other things." The court thereby adopted the position that attorney's fees were recoverable for actions based upon slander of title and cloud on title.

A version of this position was also taken, for different reasons, in *Donnelly v. Young,* 471 S.W.2d 888, 891 (Tex.Civ. App.—Fort Worth 1971, writ ref'd n.r.e.). The Fort Worth court stated, without reference to authority, that a cloud on title was the natural result of a tortious act and held that the expense of recovering the property or averting the successful conversion thereof should be recoverable.

Since that time, *Walker* has not been cited with approval and has been roundly criticized. The Corpus Christi court declined to follow *Walker* in *Ryan v. Mo-Mac Properties,* 644 S.W.2d 791, 794 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.). In *Ryan,* the court cited the underlying law on attorney's fees and refused to follow the *Walker* rationale and award attorney's fees, noting that TEX.REV.CIV.STAT. ANN. art. 2226[3] did not include actions for slander of title or to remove clouds from title.

---

**1.** *Reaugh v. McCollum Exploration Co.,* 139 Tex. 485, 163 S.W.2d 620 (1942).

**2.** Slander of title is defined as a false and malicious statement made in disparagement of a person's title to property which causes him special damage. *Hauglum v. Durst,* 769 S.W.2d 646 (Tex.App.—Corpus Christi 1989, no writ). A cloud on title exists when an outstanding claim or encumbrance is shown which, on its face, if valid, would affect or impair the title of the owner of the property. It is a suit for a specific equitable remedy. *Best Investments Co. v. Parkhill,* 429 S.W.2d 531 (Tex.Civ.App.—Corpus Christi 1968, writ dism'd); *see Ellis v. Waldrop,* 656 S.W.2d 902 (Tex.1983).

**3.** Article 2226 is now contained in TEX.CIV.PRAC. & REM.CODE ANN. § 38.001, et seq. (Vernon 1986).

Other cases cited by the Sadlers in support of their position are not on point. In *American National Bank v. First Wisconsin Mortgage Trust*, 577 S.W.2d 312, 320 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.), the court declined to reach this question because it was not adequately presented for review. *See also Veltmann v. Damon*, 696 S.W.2d 241, 247 (Tex.App.—San Antonio), *rev'd on other grounds*, 701 S.W.2d 247 (Tex.1985) (*citing Ryan v. Mo-Mac Properties* and *American National Bank v. First Wisconsin Mortgage Trust* for proposition that attorney's fees are not available on a *slander of title* action).

We hold that attorney's fees are not available for a cloud of title action. The judgment will be reformed to delete this recovery, along with the interest thereon.

■ The Sadlers argue in their final points that the prejudgment interest awards were not properly computed. The judgment provided for prejudgment interest at the rate of 10% compounded daily on all damage awards and 10% compounded annually on costs. The current version of Article 5069–1.05, § 6(g) provides that "[t]he rate of prejudgment interest shall be the same as the rate of postjudgment interest at the time of judgment and shall be computed as simple interest." Tex.Rev.Civ. Stat.Ann. art. 5069–1.05, § 6(g) (Vernon Supp.1991). Section 3(a) provides that "judgments earn interest for the period beginning on the day the judgment is rendered and ending on the day the judgment is satisfied. Interest shall be compounded *annually*" (emphasis added). Tex.Rev. Civ.Stat.Ann. art. 5069–1.05, § 3(a) (Vernon Supp.1991).

The enabling legislation provides that Article 5069–1.05, § 6 applies only to actions commenced on or after the effective date of this Act. However, it also applies to "a new trial or retrial following appeal of the trial court's judgment in an action commenced before the effective date of this act." Acts 1987, 70th Leg., 1st C.S., ch. 3, § 3(a)(2), eff. Sept. 2, 1987. This case was remanded in May of 1986, and the second trial began in March of 1988. Accordingly, the statute governs disposition of this point, and the judgment is reformed so that prejudgment interest is compounded annually as provided under the statute.

The Sadlers paid one-fourth of the stumpage value of the timber to Duvall following the 1984 judgment. Based upon our reformation of the judgment, that claim was satisfied in full when payment was made. The award for restoring the cabin has also been eliminated, as have attorney's fees. All interest awards on those recoveries are likewise deleted.

■ The Sadlers next argue that the credits provided by the judgment are applied erroneously. They contend that credits should have been applied to the damages as of the date that they were actually made rather than the date of this judgment. We agree. The payment of $21,-794.10 and the payment of $8,154.90 should be applied to prejudgment interest as of the date they were actually made, March 13, 1986. Although the latter amount was paid for postjudgment interest, it would be inequitable not to allow that to apply to prejudgment interest because the date of the commencement of postjudgment interest has changed from the 1986 date to the date of the 1990 judgment. The Sadlers also complain about the beginning dates of interest charged against the recovery set forth in the judgment, contending that the time for prejudgment interest should be shortened because the litigation has been so protracted. The times for the commencement of prejudgment interest and postjudgment interest are clearly established by law and will not be altered by this Court.

The judgment is reformed by reducing the award of $50,000 for manufactured value of the timber harvest to the stumpage value of the timber cut, being $21,535.80, with 10% prejudgment interest per annum compounded annually from December 31, 1977, with a credit of $21,560.76 on this amount and accrued interest as of March 13, 1986; the damages of $13,000 for the restoration of the cabin and interest thereon are hereby reversed and rendered; the award of attorney's fees for $72,000 with interest thereon is reversed and rendered;

the Sadlers are credited with $8,154.90 payment toward any prejudgment interest effective on the date of payment, March 13, 1986. The remainder of the judgment is hereby affirmed.