ACCEPTED
04-13-00550-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/5/2015 2:58:15 PM
KEITH HOTTLE
CLERK

**No. 04-13-00550-CV**

IN THE COURT OF APPEALS
FOURTH COURT OF APPEALS JUDICIAL DISTRICT
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/5/2015 2:58:15 PM
KEITH E. HOTTLE
Clerk

**RANDY K. SMITH,**

*Appellant/Defendant,*

vs.

**LAWRENCE REID, ROYCE REID, JENNIFER HEATH, AND THL GP INC.,**

*Appellees/Plaintiffs.*

_____

FROM THE 63RD JUDICIAL DISTRICT COURT, EDWARDS COUNTY,
CAUSE NO. 3798, HON. M. REX EMERSON, PRESIDING

_____

**APPELLANT'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE MOTION FOR REHEARING/RECONSIDERATION EN BANC**

_____

*Oral Argument Requested*

Kimberly S. Keller
kim@kellsto.com; SBN: 24014182
Shane J. Stolarczyk
shane@kellsto.com; SBN: 24033242
KELLER STOLARCZYK, PLLC
234 W. Bandera Rd. #120
Boerne, TX 78006
Tele: 830.981.5000
Facs: 888.293.8580

*Attorneys for Appellant*

# TABLE OF CONTENTS

*Page*

TABLE OF CONTENTS ....................................................... ii

TABLE OF CITATIONS ..................................................... iii

STATEMENT REGARDING EN BANC ORAL ARGUMENT ........v

EN BANC RECONSIDERATION ARGUMENT .........................1

ARGUMENT IN SUPPORT OF MOTION FOR
RECONSIDERATION EN BANC ............................................2

I.    INTRODUCTION...........................................................2

II.    FACTUAL BACKGROUND.....................................................4

III.    THE ATTORNEY'S FEES AWARD MUST BE VACATED ...............19

    A.    *The judgment awards attorney's fees under Chapter 38, but Reid neither pleaded nor succeeded on a Chapter 38-based claim* ...........21

    B.    *The trial court's findings indicate the award is tied to the breach of covenant finding, but Reid did not plead for such attorney's fees*................................................22

    C.    *Alternately, the amount of fees awarded far exceeds the percentage of fees related to the breach of covenant finding* ...............................25

CONCLUSION ................................................................27

CERTIFICATE OF COMPLIANCE & SERVICE ......................29

# TABLE OF CITATIONS

## SUPREME COURT OF TEXAS CASES

*O'Connor v. First Ct. of Appeals,*
    837 S.W.2d 94 (Tex. 1992) ...................................................... 1

*Tony Gullo Motors I, L.P. v. Chapa,*
    212 S.W.3d 299 (Tex. 2006) ................................................ 25

## TEXAS INTERMEDIATE APPELLATE COURT CASES

*Bill Miller Bar-B-Q Enterprises, Ltd. v. Gonzales,*
    No. 04-04-00747-CV, 2005 WL 2176079 (Tex. App. —
    San Antonio 2005, pet. denied) ...................................... 26,27

*Edlund v. Bounds,*
    842 S.W.2d 719 (Tex. App.—Dallas 1992, writ denied) ......... 24

*Gorman v. Gorman,*
    966 S.W.2d 858 (Tex. App.—Houston [1st Dist.] 1998,
    pet. denied) ....................................................................... 21

*Hartford Cas. Ins. Co. v. Budget Rent–A–Car Sys., Inc.,*
    796 S.W.2d 763 (Tex. App.— Dallas 1990, writ denied) ........ 24

*Janicek v. 2016 Main Owners Ass'n, Inc.,*
    No. 01–96–00599–CV, 1997 WL 414951 (Tex. App.—
    Houston [1st Dist.] July 24, 1997, no writ) ......................... 24

*Kreighbaum v. Lester,*
    No. 05–06–01333–CV, 2007 WL 1829729 (Tex. App.—
    Dallas June 27, 2007, no pet.) ........................................... 24

*Perez v. Tex. Disposal Sys.,*
    103 S.W.3d 591 (Tex. App.—San Antonio 2003,
    pet. denied) ....................................................................... 22

*Sadler v. Duvall,*
815 S.W.2d 285 (Tex. App.-—Texarkana 1991,
writ denied) ................................................................... 19,22

*State Farm Fire & Cas. Ins. Co. v. Leasing Enters.,*
716 S.W.2d 553 (Tex. App.-—Houston [14th Dist.] 1986,
writ ref'd n.r.e.) ................................................................ 22

### STATUTORY AUTHORITY

TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 .............................. 21,23

TEX. CIV. PRAC. & REM. CODE ANN. § 5.006 .............................. 20,23

TEX. R. APP. P. 41.2 .................................................................... 1

## STATEMENT REGARDING EN BANC ORAL ARGUMENT

Appellant Randy Smith appreciates that it is a rarity for this Court to hold en banc oral argument. This case, however, presents the Court with a complicated set of facts, which, as demonstrated by the Panel's Opinion, can easily confuse even the most experienced jurist. Smith contends oral argument is warranted to cut through the confusion and ensure that this Court appreciates the legal distinctions arising in this case that make all the difference in the outcome of the Opinion. Simply put, Smith is confident that a collective discussion regarding the legal issues in this case will result in a different outcome. As such, Smith respectfully requests this Court hold oral argument before disposing of this Motion.

# EN BANC RECONSIDERATION ARGUMENT

Texas Rule of Appellate Procedure 41.2(c) provides that, while en banc consideration of cases is "disfavored," it should be ordered if:

- ➢ "necessary to secure or maintain uniformity of the court's decisions," or

- ➢ if "extraordinary circumstances" require.

TEX. R. APP. P. 41.2(c). In this case, both situations are presented by this case.

"Unless a court of appeals chooses to hear a case en banc, the decision of a panel constitutes the decision of the whole court." *O'Connor v. First Ct. of Appeals,* 837 S.W.2d 94, 96 (Tex. 1992). The current Opinion (attached to this Motion as Tab A) contradicts not only this Court's precedent, but also conflicts with Texas Supreme Court precedent regarding the pleading and proof requirements underlying the award of attorney's fees. Texas Rule of Appellate Procedure 49.7 authorizes this Court to consider en banc a case that was previously considered by a panel of this Court. TEX. R. APP. P. 49.7. Smith respectfully requests this Court use the authority afforded in Rule 49.7 and reconsider this case en banc.

1

## ARGUMENT IN SUPPORT OF MOTION FOR RECONSIDERATION EN BANC

## I.
### INTRODUCTION

Although this direct appeal raised numerous complex legal challenges to the trial court's judgment regarding the existence of a public road, easements, and adverse possession, this Motion for En Banc Consideration focuses on only one of the issues raised in the direct appeal: the amount of attorney's fees awarded by the trial court. This Court, in its Panel Opinion, *Tab A,* affirmed the award.

This Court's holding, however, ignores the "narrowing" language in the trial court's final judgment. Here is what the undisputed evidence demonstrates:

- the lawsuit raised numerous causes of actions by both parties;

- the parties pleaded for attorney's fees under some of the causes of action;

- the trial court awarded attorney's fees under only **one** cause of action: breach of contract (Chapter 38) (the trial court's judgment is attached to this Motion as *Tab B*);

- during the hearing on attorney's fees, both parties' counsel segregated their fees, agreeing that only 10% of the fees incurred were for the breach of contract claim (approximately $8,000);

- even though it awarded attorney's fees based on only on the breach of contract cause of action, the trial court erroneously awarded an amount of attorney's fees that constituted 100% of the attorney's fees incurred for all causes of action (approximately $80,000);

- this Court then mistakenly affirmed that excess award of attorney's fees;

In affirming the attorney's fees award, the Panel allowed for the full amount of attorney's fees by stating that the trial court could have awarded the full amount of fees based on the cause of action arising under the Declaratory Judgment Act (Chapter 37).

While it would be a different case if the trial court's judgment was silent as the basis of the attorney's fees award, that is not the case before this Court. Here, the trial court specified that it was awarding fees based **only on the breach of contract claim**. *Tab B.* The Panel ignored that language. It is true that the trial court *could*

3

*have* awarded fees under the Declaratory Judgment Act (Chapter 37), but the record shows that the trial court *chose not to do so. Tab B.* In essence, this Court chose to *rewrite* the trial court's final judgment to include a provision awarding fees under the Declaratory Judgment Act in order to get to its holding. *Tab A.*

Even more disturbing, the Panel ignored the agreement of the parties to offer evidence of their attorney's fees in a segregated manner. Counsel for each side **agreed** that only 10% of the attorney's fees incurred was for the breach of contract claim. Yet, the Panel ignored the trial court's limiting language, as well as the parties' agreement, in affirming an award for 100% of the fees.

The Opinion from the Panel blazes new ground, but in a way that is contrary to well established precedent from the Supreme Court of Texas. This Court should grant this Motion for En Banc Consideration to withdraw this erroneous Opinion and remedy the harm that will be suffered by Smith.

## II.
### FACTUAL BACKGROUND

This direct appeal centered on the status of a road in Edwards County. The road, referred to throughout the record as "Spur

4

Road," crosses through a small portion of the Reid Ranch (a 1,247-acre ranch owned by Appellees[1]) before entering the 640-acre Smith Ranch.[2] After a bench trial, the trial court ruled in favor of Reid,[3] finding Spur Road was not a county road, that Spur Road was not an easement appurtenant to the Smith Ranch, and ordered Smith to pay nearly $80,000 in attorney's fees (plus $20,000 in appellate attorney's fees). (3CR644).

### *Spur Road*

Spur Road (**black line** in the image below) is a 2/3-mile roadway that leaves County Road 330, crosses the Reid Ranch from East to West, and then enters the Smith Ranch:

---

[1]Plaintiffs/Appellees are referred to in this Brief collectively as "Reid." The Reid Ranch is comprised of Tracts One through Nine. (3CR654). The Reid Ranch was purchased by Royce I. Reid in 1953. (3CR654; 2RR45).

[2]Defendant/Appellant is Randy K. Smith, referred to in this Brief as "Smith." The Smith Ranch comprises two tracts, one being 639.192 acres purchased in 2003 and one being 81.03 acres purchased in 2010. (3CR654-55).

[3]Edwards County was joined as a Cross-Defendant as an "interested party" under the Texas Declaratory Judgment Act. (2CR464).



(PE1) (yellow: County Road 330; blue: Pulliam Creek; black: Spur Road) (2RR23, 48, 50-51, 208-09; 3RR13-14).

When Spur Road begins (off of County Road 330), there is no gate, cattle guard, sign, or fence denying the public access to the road:



(PE10A; 2RR80).

For as long as anyone can remember, Spur Road has been utilized by neighboring property owners without protest by Reid or Reid's predecessors in title.[4] Public documents show that the Edwards County Road Department has been performing road maintenance on Spur Road since the mid-1970s. (DE3) (verbal statement of Lee Sweeten, current Precinct #2 Commissioner of Edwards County, Texas, that he performed road maintenance work

_____

[4](2RR272, 280). The parties stipulated that Spur Road is a spur off County Road 330, which has formerly been known as County Road 204. (2RR21).

on said spur while employed by the Edwards County Road Department in the mid-1970s).

Denman L. Cloudt, who is Smith's predecessor in title,[5] had always used Spur Road to access the Smith Ranch during his ownership. (2RR172) ("Oh, yes, we used it. My hunters used it. That was the only entrance into the property."); (2RR180). Cloudt also stated, "[l]ater on we found [another entrance] down here somewhere . . . but it's in — it's in almost an impossible place to maintain. . . . [b]ecause of the flood damage that occurs when you have a flood in that country. . . . it's impossible to build a crossing at that other place." (2RR172-73). Cloudt spent over $50,000 on crossings over Pulliam Creek and "[t]hey are barely usable now." (2RR172, 174).

### *The Commissioners Court's 1998 Order affirming Spur Road as a county road.*

While he still owned the property, Cloudt took steps to ensure that Spur Road was officially classified as a county road:

---

[5]Cloudt still owns 423 acres to the east of the Smith Ranch. (2RR176).

> I am very familiar with the spur road that runs across the Reid property to the property I sold to Randy K. Smith. Up until the time that I purchased the property, the Moore's and the Turnepaugh's just used this road with oral permission. I am the person who instigated going to Edwards County to have them declare the road as a public road. That was done when I was an owner. When I sold the property to Smith, it was done so with the understanding that the spur was a county road. ~~The reason that I instigated going to the county about the spur was because I planned to sell the property and I needed to provide legal access.~~

(PE17) (Cloudt's affidavit) (cropped).

In 1998, the Edwards County Commissioners Court unanimously passed a motion to declare:

> [Spur Road] has been considered part of the County road system & whereas, said spur has been historically worked as a county road, therefore, be it resolved that it is hereby confirmed that it is part of the County Road system and shall remain as such for all purposes.

(DE5).

### *Smith leases and then buys 640 acres ("the Smith Ranch") from Cloudt.*

In 2000, Smith leased the 640 acres south of Reid Ranch from Cloudt (this acreage is referred to throughout the litigation as "the Smith 640" and "the Smith Ranch"). (3CR656; 2RR204; 3RR11). When investigating whether to lease (and then later, whether to

9

purchase) the property, Smith used the Spur Road entrance to the property. (PE1; 2RR23, 48, 50-51, 208-09; 3RR13-14). Spur Road offered a desirable access point because it ran directly from County Road 330 into the campsite located on Smith Ranch. (2RR237) (PE1 [Smith campsite located where black line ends]).

During Smith's three-year lease, Reid never objected to Smith's use of Spur Road, which traveled right in front of the Reid house, before entering the Smith campsite. (2RR60, 159; 3RR11-14). Reid also never gave any indication to Smith or others that they had no right to travel Spur Road.[6] Smith, relying on Reid's acquiescence and the free and uninterrupted travel during those three years, paid approximately $600,000 to purchase the Smith 640. (PE7; 2RR207-08; 3RR13, 58-59). The deed did not reference

---

[6]Smith's predecessors and others owning nearby property often used Spur Road. (2RR58-59, 79) ("[S]o for at least 45 years we know as far as you know that people traveling across your property to the south and to the west unimpeded? Yes."). Evidence also revealed Reid and his foreman had multiple contacts with Smith, even hiring Smith's children to work on the Reid Ranch, but Reid never once communicated to Smith that he had no right to use Spur Road. (2RR122-23). Seven of Smith's ten children worked on the Reid Ranch feeding game, cleaning brush, or cleaning houses. (2RR215).

an easement on Spur Road, because, as Cloudt claimed, the road was public.[7]

After purchasing the ranch, Smith, in reliance on the usability of the Spur Road entrance, expended vast resources and time improving the Smith Ranch. (2RR221-27) (describing multiple refurbished trailers, electricity, septic systems, water pump system, and rain catchment systems); (3RR42-43) (describing improvements and estimating their cost at $125,000 to $140,000).

During the entirety of the time Smith and his ten children lived on Smith Ranch full time, Reid gave no indication to Smith or others that Spur Road was a private road. (2RR79-80). Reid conceded that for "45-plus years [of his lifetime] there's never been a gate across the road that we're talking about." (2RR80). Reid also conceded no one "ever asked for his permission" to use Spur Road and that he has never "told anyone that they needed [his] permission to use the road." (2RR81-82).

Use of Spur Road to access Smith Ranch is integral to Smith's use and enjoyment of the property. Where County Road 330 (yellow

---

[7](3RR47). Cloudt testified the documents do not mention an easement because Edwards County had already designated Spur Road as a county road. (2RR199). Cloudt told Smith, "That [Spur Road] is your access." (2RR240).

line) meets Spur Road (black line), there is a crossing over Pulliam Creek (blue line). (PE1; 2RR114). This creek crossing has washed out hundreds of times and been repaired by Edwards County for the benefit of Reid and others using Spur Road. (2RR114). Over 600 of Smith's acreage is located across Pulliam Creek. (2RR115; 3RR21). Reid acknowledged that if Smith is denied use of Spur Road (whose crossing is maintained by Edwards County), Smith will have to construct and maintain his own private crossing over Pulliam Creek to access the 600 acres of his property on the other side of Pulliam Creek. (2RR116).

### *Smith purchases 80 more acres from Cloudt, triggering Reid to contest Smith's use of Spur Road to enter Smith Ranch.*

In 2010, Smith purchased another 80 acres from Cloudt that adjoined the Smith 640. (3CR657; 3RR58-59).



(PE1). This newly-acquired tract abuts Highway 55. (3CR657).

After Reid learned that Smith had purchased the 80 acres with Highway 55 frontage, Reid began blocking Smith's access to Spur Road. (2RR60, 63, 110; PE11 [letter from Reid to Smith]). First, Smith arrived to find his gate to the 640 acres locked. (3RR18-19) ("There was a lock and I was really stunned, so I cut the lock and proceeded in. Then at some point we had some encounter and they verbally — I think it was Royce that expressed that we didn't have a right to come through here, and I was rather stunned, to be honest with you, because I thought all those matters had already been

13

settled with the Bay-Houston suit."). Then, Reid placed tractors and boulders across Spur Road to block Smith's entrance and exit via the Spur Road access gate.[8]

Reid contends Smith should use the entrance to the property located off Highway 55 (the entrance that came with the newly-purchased 80 acres), but Smith testified to the impossibility of using the Highway 55 entrance. (2RR216; 3RR21-26). To utilize this entrance, Smith is forced to leave the vehicles parked on the side of the Highway 55 entrance and then have someone on the property come pick them up with an all-terrain vehicle. (2RR230-31).

### *The Underlying Lawsuit*

In 2010, Reid filed suit against Smith. (1CR8). Reid asked for a temporary injunction and for a declaration that Smith has no right to use Spur Road. (1CR9-10). Reid was granted the temporary injunction. (1CR38). Smith then answered the lawsuit with a general denial. (1CR41).

### *The 2011 Resolution reaffirming Spur Road as a county road.*

---

[8] (3RR20). Since Smith's purchase of the 80 acres, Reid has also stated Smith does not have permission to cross from County Road 330, over the 20 feet of Reid Ranch, to access Smith's 80-acre tract. (2RR120).

After he got sued, Smith began looking for the public records related to Spur Road. (3RR61-62). Smith asked the Edwards County Commissioners to review the public documents and clarify that Spur Road was a public road. (3RR62; DE4 [recounting that Smith testified before the Commissioners]). At a 2011 Meeting, Commissioner Sweeten moved that the Commissioners Court adopt a resolution affirming Spur Road is a designated county road. (DE4). The Commissioners voted 4-0 to adopt the resolution. (DE4).

The Resolution provides:

"WHEREAS, there is a road described as a spur off of County Road #330, which spur is situated upon and passes through the Royce Reid Ranch, is approximately two-thirds (2/3) of a mile in length, and terminates at the entrance gate to the Randy and Donna Smith Ranch (f/k/a Cloudt Ranch, and f/k/a Moore Ranch);

(DE3) (cropped).

The 2011 Resolution goes on to describe the evidence considered by the Commissioners:

WHEREAS, there is evidence that said spur has been and remains a County Road, to-wit: (1) Resolution of the Edwards County Commissioners' Court dated June 11, 1998 and recorded in Vol. 12, Pg 543 of the Minutes of the Commissioners' Court of Edwards County, Texas, (2) Written statement of Marshall Craig, former Precinct #2 Commissioner of Edwards County, Texas, recorded April 12, 1978 in Vol 6 at pg 29 of the Deed Records of Edwards County, Texas, and (3) verbal statement of Lee Sweeten, current Precinct #2 Commissioner of Edwards County, Texas, that he performed road maintenance work on said spur while employed by the Edwards County Road Department in the mid-1970s;

(DE3) (cropped).

15

Finally, the 2011 Resolution goes on to note that Spur Road was "inadvertently omitted" from the County Road Map and:

C) that said spur has been and continues to be a county road for all purposes,

D) that said spur shall hereafter be included as part of the county road inventory for al county, state and federal record keeping and reporting purposes,

E) that said spur shall hereafter be known as the Smith Ranch Spur to County Road #330

(DE3) (cropped).

### *Reid adds a suit to remove a cloud on his title related to the "bubble."*

In May 2011, Reid amended his petition to add an allegation related to a small, 1.165-acre piece of land located near the southern boundary of Reid Ranch and the northern boundary of the Smith 640. (PE2; 1CR46). This 1.165-acre piece has been referred to throughout this litigation as the "bubble." The "bubble" contains a natural spring that had been fenced around to avoid washouts. (2RR69-70, 74, 209-10, 213; 3RR37-38, 63). Reid's new claim alleged prior owners of the two ranches had agreed the bubble was a part of the Reid Ranch and that future owners would not claim the bubble by adverse possession. (1CR46-47). Smith answered this new claim by asserting a limitations defense and adverse possession. (3CR527).

### *The Bench Trial and Judgment*

The trial court heard testimony from multiple witnesses and admitted documentary evidence. (2RR-3RR [testimony]; 4RR [Reid's exhibits]; 5RR [Smith's exhibits]). The trial court's final judgment provides:

- "There is no evidence of Edwards County acquiring public interest in the spur by purchase, condemnation, dedication, or a Court's final judgment or any other law. Nor did the county include the spur on its road map thereby clarifying its status as a public road."

- "[T]he 'spur road' is not a public road."

- "[T]here are no access easements appurtenant . . . and specifically that the 'spur' road at issue herein is not an easement appurtenant."

- "[T]he 2003 Deed from D.L. Cloudt, Sr. to Randy K Smith . . . creates a cloud upon the 'Reid' title. . . Throughout this trial such land has been described as the 'Bubble.'"

- "Smith claimed such 'bubble' by virtue of adverse possession. . . [T]he claim by Smith to adverse possession of the 'bubble' was in fact a breach of an express covenant not to so claim

land . . . by adverse possession, which covenant originated in a agreement between RT Craig and Jay A. Blalock dated July 27, 1937."

- "Reid is entitled to enforce the terms of said express covenant not to so claim land by adverse possession."

- "The Plaintiffs are granted a permanent injunction against Defendant Randy K. Smith, his agents and employees, prohibiting them from utilizing any portion of the Reid Ranch to access the Smith property or any portion thereof."

- "Under the discretionary powers of the Court to award attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code, the Plaintiffs are awarded attorney's fees against the Defendant, Randy K. Smith through the trial in the amount of $79,171.30 and are conditionally awarded attorney fees against Defendant Randy K. Smith in the event that the Defendant Smith appeals this matter to the 4th Court of Appeals in the amount of $20,000."

(3CR638-42). Smith timely filed his notice of appeal to this Court. (3CR703). The Panel then issued an Opinion affirming the

judgment in all respects other than to make the award of attorney's fees on appeal contingent.

## III.
### THE ATTORNEY'S FEES AWARD MUST BE VACATED

The Panel erred by affirming the award of excess attorney's fees. This Court should grant this Motion for En Banc Reconsideration, withdraw the Panel's Opinion, and issue a new Opinion either vacating the award of attorney's fees altogether or, at a minimum, modifying the award to remove the excess amount from the attorney's fees award. Here is how the award of attorney's fees was erroneous:

Reid asked for attorney's fees under multiple theories: (1) to remove the cloud on his title (related to the "Bubble");[9] (2) under "TRCP 38.001," which is for breach of contract claims, (2CR474); (3) under "the Declaratory Judgments Act," (2CR474); and (4) "under common law."[10]

---

[9](2CR467). Smith notes that attorney's fees are not recoverable for suits to remove clouds on title. *Sadler v. Duvall*, 815 S.W.2d 285, 293–94 (Tex. App.-—Texarkana 1991, writ denied) (attorney's fees not recoverable either under Chapter 38 or as component of actual damages).

[10](2CR474). Importantly, Reid did not plead for attorney's fees under Section 5.006 of the Texas Property Code, which allows a party who succeeds in a breach of covenant claim to recover attorney's fees. TEX. CIV. PRAC. & REM. CODE ANN. § 5.006(a) ("In an action based on breach of a restrictive covenant

When the trial court awarded attorney's fees, it awarded them under only **<u>one</u>** theory of recovery — **Chapter 38**. (3CR642) (emphasis added) ("Under the discretionary powers of the Court to award attorney's fees under **Chapter 38** of the Texas Civil Practice and Remedies Code, the Plaintiffs are awarded attorney's fees against the Defendant, Randy K. Smith through the trial in the amount of $79,171.30 and are conditionally awarded attorney fees against Defendant Randy K. Smith in the event that the Defendant Smith appeals this matter to the 4th Court of Appeals in the amount of $20,000"). (3CR642) (emphasis added). This award should be vacated for multiple reasons.

A. ***The judgment awards attorney's fees under Chapter 38, but Reid neither pleaded nor succeeded on a Chapter 38-based claim.***

Chapter 38 is entitled, "Recovery of Attorney's Fees." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001. It allows a person to recover attorney's fees if the claim is for rendered services, performed labor, furnished material, freight or express overcharges, lost or damages freight or express, killed or injured stock, a sworn account, or an

---

pertaining to real property, the court shall allow a prevailing party who asserted the action reasonable attorney's fees").

20

oral or written contract. *Id.* The trial court awarded attorney's fees under Chapter 38. (3CR642). However, the case did not involve any claims referenced in Chapter 38 nor did Reid succeed on any Chapter 38 claims in order to be entitled to attorney's fees. *Id.* Accordingly, this Court should reverse and vacate the award of attorney's fees against Smith.

Reid cannot salvage his attorney's fees award by pointing to the judgment's ruling in favor of his Declaratory Judgment action. *Gorman v. Gorman,* 966 S.W.2d 858, 866 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (party successful in declaratory judgment action not entitled to attorney's fees under Chapter 38). Nor can Reid succeed by pointing to the judgment's rulings related to his suit to remove cloud on title or Smith's purported breach of express covenant. *See Perez v. Tex. Disposal Sys.,* 103 S.W.3d 591, 592 (Tex. App.—San Antonio 2003, pet. denied) (no Chapter 38 attorney's fees for breach of covenent); *Sadler v. Duvall,* 815 S.W.2d 285, 293–94 (Tex. App.-—Texarkana 1991, writ denied) (no Chapter 38 attorney's fees for suit to remove cloud on title).

**B.** ***The trial court's findings indicate the award is tied to the breach of covenant finding, but Reid did not plead for such attorney's fees.***

A party's failure to plead for attorney's fees constitutes waiver of those fees. *State Farm Fire & Cas. Ins. Co. v. Leasing Enters.,* 716 S.W.2d 553, 555 (Tex. App.-—Houston [14th Dist.] 1986, writ ref'd n.r.e.). As noted earlier, Reid asked for attorney's fees for his suit to remove cloud on title,[11] Chapter 37 (Texas's Declaratory Judgment Act), Chapter 38, and "common law." (2CR467, 474). Reid did not plead for attorney's fees under Section 5.006, which allows a party who succeeds in a breach of covenant claim to recover attorney's fees. TEX. CIV. PRAC. & REM. CODE ANN. § 5.006.

The trial court's findings of fact provide: The agreement between RT Craig and Jay A. Blalock, dated July 27, 1937, is an

---

[11]Smith notes that Reid's pleading contains a header entitled, "SUIT TO REMOVE CLOUD ON TITLE AND FOR BREACH OF COVENANTS AND RESTRICTIONS." (2CR466). However, the request for attorney's fees contained within this section of the petition provides: Smith's solicitation and recordation of the instrument from Cloudt to Smith and Smith's continued claim of the right of possession of such property creates a cloud on Reid's title to such lands, and accordingly, Reid requests that the court remove such clouding (Cloudt) instruments from Reid's chain of title. In that respect, the Plaintiffs ask for the award of attorney's fees necessary to remove such cloud on, and to clarify the entire boundary between Section 49 and 50, plus costs of court, such amounts being in excess of the minimum jurisdictional limits of the Court. (2CR466). The request for attorney's fees found at the end of Reid's petition references only Chapter 38, "the Declaratory Judgment Act," and "common law" as authorizing an award of attorney's fees to him. (2CR474).

22

express covenant by Smith's predecessors in title Not to Claim Land by Adverse Possession. (3CR660). Smith, in asserting a claim for adverse possession to land, breached such express covenant, and in so breaching, Smith is liable for attorney's fees and costs under section 38.001 of the Texas Civil Practice and Remedies Code. (3CR660).

The trial court's conclusion that Smith's purported breach of the express covenant renders him liable for attorney's fees under Chapter 38 is erroneous. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (creating liability for attorney's fees for, *inter alia,* successful breach of contract), *with* TEX. CIV. PRAC. & REM. CODE ANN. § 5.006 (creating liability for attorney's fees for successful breach of covenant claim). Accordingly, this Court should reverse and vacate the award of attorney's fees against Smith.

Moreover, even if this Court disregards the fact that the trial court conditioned its attorney's fees award on Chapter 38, the Panel was wrong in "rewriting" the judgment based on the trial court's findings of fact related to the purported breach of express covenant. Reid is limited to the theories of attorney's fees pleaded, and he cannot now be awarded attorney's fees based on the unpleaded

23

Section 5.006 theory. *See Hartford Cas. Ins. Co. v. Budget Rent–A–Car Sys., Inc.,* 796 S.W.2d 763, 771 (Tex. App.— Dallas 1990, writ denied) (holding defendant who pleaded only contractual right to attorney's fees did not invoke attorney's fees provision of the Act for declaratory judgment action); *Janicek v. 2016 Main Owners Ass'n, Inc.,* No. 01–96–00599–CV, 1997 WL 414951, at *5 (Tex. App.— Houston [1st Dist.] July 24, 1997, no writ) (not designated for publication) (holding defendant, who pleaded specific grounds for attorney's fees, did not invoke the Declaratory Judgment Act's attorney's fees provision by not pleading for fees under the Act); *see also Kreighbaum v. Lester,* No. 05–06–01333–CV, 2007 WL 1829729, at *2 (Tex. App.—Dallas June 27, 2007, no pet.) (mem. op.) (citing *Edlund v. Bounds,* 842 S.W.2d 719, 731 n. 5 (Tex. App.—Dallas 1992, writ denied) (explaining that pleader confined to specific allegations, which control over general ones).

**C.** ***Alternatively, the amount of fees awarded far exceeds the percentage of fees related to the breach of contract/covenant finding.***

If this Court rejects Smith's request to vacate the attorney's fees award in its entirety, this Court, at a minimum, must modify the Panel's Opinion that affirms the award of 100% of the attorney's

fees. At trial, Reid's attorney testified Reid incurred a total of $87,613.30 in attorney's fees. (3RR91-93; PE21-22) ($61,613.30 in attorney's fees up until trial; $12,000 in attorney's fees for trial preparation and trial; and $14,000 in paralegal fees). Texas law requires segregation of attorney's fees, *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006), and Reid's attorney complied with this requirement by offering evidence that 10% of the attorney's fees were incurred in relation to Smith's claim of adverse possession to the "Bubble." (3RR94). Reid did not dispute this evidence in his briefing or oral argument.

Reid's attorney also testified to the trial court that the remaining 90% of Reid's fees were incurred for unrelated legal issues, some of which were abandoned before trial. (3RR94) (30% of the time was spent on claims that were abandoned; 30% of the time was spent on defending against the 2011 County Road Resolution; 30% of the time was spent on "our affirmative claims . . . the request for the TRO, the request for declarations, the boundary, defending the easement by estoppel and defending against the legal effect of the court-related items that were admitted a few minutes ago, the '78 statement and the '98 actions of the commissioners

court").

As argued earlier, Reid neither pleaded nor succeeded on a Chapter 38-based claim and Reid failed to plead for attorney's fees under Section 5.006, thus, the judgment for attorney's fees should be reversed and vacated. However, if this Court rejects these argument, then this Court should, at a minimum, modify the trail court's judgment to reflect an amount that constitutes fees for the breach of contract claim (as agreed to by the parties), 10%[12] of $87,613.30 (or $8,761.33). *See Bill Miller Bar-B-Q Enterprises, Ltd. v. Gonzales,* No. 04-04-00747-CV, 2005 WL 2176079, *3 & n.3 (Tex. App. -- San Antonio 2005, pet. denied) (unpublished) (holding evidence legally insufficient to support entirety of award [$50,000], but reducing award to amount supported by evidence[$24,000]). Alternatively, if this Court does not follow the framework established by *Bill Miller Bar-B-Q,* this Court should remand the case to the trial court with specific instructions for the trial court to calculate what amount would constitute 10% of the reasonable and necessary attorney's fees.

---

[12]Smith's attorney stated at trial: "I agree with Mr. Davis' number in regard to the 10 percent is a good number on the amount of time and effort that we spent on adverse possession." (3RR98).

## **CONCLUSION**

Smith respectfully requests this Court grant this Motion for En Banc reconsideration, withdraw the Panel Opinion, and issue a new Opinion either vacating the award of attorney's fees altogether or, at a minimum, modifying the award to remove the excess attorney's fees from the award to ensure that the amount of attorney's fees awarded comports with the evidence submitted at trial.

Respectfully submitted,

KELLER STOLARCZYK PLLC
234 West Bandera Road,
No. 120
Boerne, Texas 78006
Telephone: 830.981.5000
Facsimile: 888.293.8580

By:    /s/Kimberly S. Keller
Kimberly S. Keller
SBN: 24014182
Email: kim@kellsto.com
Shane J. Stolarczyk
SBN: 24033242
Email: shane@kellsto.com

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE & SERVICE

I certify that Appellant's Motion for En Banc Reconsideration contains 4015 words. On February 5, 2015, I served a copy of Appellant's Motion for En Banc Reconsideration on those listed below via this Court's e-filing system and email/facsimile:

Joe M. Davis
THE DAVIS LAW FIRM
P.O. Box 2349
Boerne, Texas 78006

Stephan B. Rogers
ROGERS & MOORE, PLLC
309 Waters St., Suite 114
Boerne, TX 78006

/s/Kimberly S. Keller
Kimberly S. Keller



# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00550-CV

Randy K. **SMITH**,
Appellant

v.

Lawrence **REID**, Royce Reid, Jennifer Heath and THL GP Inc.,
Appellees

From the 63rd Judicial District Court, Edwards County, Texas
Trial Court No. 3798
Honorable M. Rex Emerson, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:       Catherine Stone, Chief Justice
               Karen Angelini, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  December 23, 2014

AFFIRMED AS MODIFIED

Randy K. Smith appeals the trial court's judgment enjoining him from using a road located on property owned by Lawrence Reid, Royce H. Reid, Jennifer Heath, and THL GP, Inc. (collectively, the Reids).  In four issues, Smith argues that the trial court erred in: (1) declaring that the road is not a public road; (2) determining that Smith did not have an easement by estoppel; (3) determining that Smith is liable for breach of covenant; and (4) awarding attorney's fees.  We modify the trial court's judgment to condition the award of appellate attorney's fees on an unsuccessful appeal by Smith.  In all other respects, we affirm the judgment of the trial court.

**BACKGROUND**

The Reids are the owners of approximately 1,231.6-acres of real property located in Edwards County known as the Reid Ranch. The Reid Ranch consists of nine tracts of land. The Reids trace their ownership of the ranch to Royce I. Reid, who acquired the ranch by General Warranty Deed dated May 14, 1953. The May 14, 1953 Warranty Deed does not contain any exception for any easement benefiting adjoining property.

Smith owns 720.222 acres of land adjoining the Reid Ranch ("Smith Ranch"). The Smith Ranch includes two tracts: a 639.192-acre tract and an 81.03-acre tract (hereinafter referred to as the 640-acre tract and the 81-acre tract). Smith acquired the 640-acre tract from Denman L. Cloudt by General Warranty Deed dated May 8, 2003 ("Cloudt Deed"). The 81-acre tract was acquired by General Warranty Deed dated February 19, 2010. Neither Warranty Deed contains reference to conveyance of an easement or other appurtenant right over and across any portion of the Reid Ranch.

Edwards County Road 330 originates at a point of intersection with State Highway 55 on the southeastern boundary of Reid Ranch. County Road 330 traverses Reid Ranch. There is a road known as "the spur road" which departs from Edwards County Road 330 in a generally westerly direction crossing from east to west across portions of the Reid Ranch. Specifically, the spur road crosses the sixth tract and the third tract of the Reid Ranch. The spur road then enters into the Smith Ranch at a point such that it intersects the boundary line between the Reid Ranch and the Smith Ranch. For a number of years, the Reids permitted Smith and his predecessors in title to use the spur road to conveniently access his 640-acre tract. The following map was admitted at trial:



(The thick black line is the spur road; the yellow line is County Road 330; and the blue line is Pulliam Creek).

Bay-Houston Towing Co. owned property south of the Smith Ranch. In 2007, Bay-Houston sued Smith in an attempt to establish the right to use the spur road to travel across Smith's property. Because Bay-Houston also had to use a portion of the Reid Ranch to reach its property, Smith asked for leave of court to join the Reids in the litigation, and pointed out that both the Reids and "Edwards County officials . . . contest and dispute that this roadway over the Reid Ranch is a public highway." In their answer to Smith's Third Party Petition, the Reids denied "that all or any portion of the roadway in question is a public road." To avoid litigation, the Reids entered into a

Rule 11 agreement with Bay-Houston providing that they would give Bay-Houston permission to use the spur road across Reid Ranch if Bay-Houston won its suit against Smith. Smith then non-suited his third party claim against the Reids. Bay-Houston lost at trial and was not allowed to use the spur road across Smith's property, thus rendering the Rule 11 agreement moot.

In February 2010, Smith purchased an additional 81-acre tract bordering his 640-acre tract and the Reid Ranch to the east. The 81-acre tract gave Smith direct access from State Highway 55 to his 640-acre tract. Smith installed a gate to access his property from the state highway.

Upon noticing the new gate and learning that Smith no longer needed to cross Reid Ranch to access his property, Lawrence Reid wrote a letter to Smith dated March 11, 2010. The letter congratulates Reid on his recent purchase of land and further states:

> Since your new acquisition provides direct access to State of Texas Highway 55, I request we speak soon to discuss your current ingress through our property. We have acted neighborly in the past and wish to continue in such manner, however any necessity of yours to cross our property has now ceased. It is my belief and desire that an acceptable time frame for you to complete your new entrance be reached to accommodate everyone's needs and wishes.

The letter was posted on Smith's gate.[1] Smith did not respond to the letter; at trial, he claimed he never received the letter. Having never heard from Smith, in late May 2010, the Reids blocked the spur road with a tractor to prevent Smith from using it. Royce was at the house when Smith attempted to access the road. Royce informed Smith that he no longer needed to use the road. Smith responded that "he thought he had some type of right to traverse that property." Smith could not explain what right he thought he had, so Royce then moved the tractor and told Smith he had two months to find his proof of access. The Reids left the road unblocked all summer, but Smith never contacted the Reids, so the Reids blocked the road again on Labor Day weekend. This time they blocked the road with rocks and a gooseneck trailer. Smith still did not contact the Reids.

---

[1] Royce Reid testified that the letter was posted on the gate "numerous times."

On November 18, 2010, the Reids filed suit against Smith, asking for a temporary injunction and for a declaration that Smith has no right to use the spur road. The Reids were granted a temporary restraining order prohibiting Smith from using the spur road across the Reid Ranch. Smith then began exclusively using his property to access the 640-acre tract from State Highway 55.

A few months later, Smith approached the Edwards County Commissioners' Court and asked the court to declare that the spur road is a county road. On February 8, 2011, the commissioners' court adopted a resolution titled "Smith Road Spur to County Road 330." The resolution provides that:

> [T]here is evidence that [the spur road] has been and remains a County Road, to-wit: (1) Resolution of the Edwards County Commissioners' Court dated June 11, 1998 and recorded in Vol. 12, Pg[.] 543 of the Minutes of the Commissioners' Court of Edwards County, Texas, (2) Written statement of Marshall Craig, former Precinct #2 Commission of Edwards County, Texas, recorded April 12, 1978 in Vol[.] 6 at [P]g[.] 29 of the Deed Records of Edwards County, Texas, and (3) verbal statement of Lee Sweeten, current Precinct #2 Commissioner of Edwards County, Texas, that he performed road maintenance work on said spur while employed by the Edwards County Road Department in the mid-1970s[.]

Based on this evidence, the commissioners' court found and ordered that the spur road "has been and continues to be a county road for all purposes," and that the "spur shall hereinafter be included as part of the county road inventory[.]" However, the resolution concludes that the spur road "shall not be added to the official County Road map until such future time as [Transportation Code] proceedings are completed . . . and adding said spur road to the map is expressly ordered by this Court." The June 11, 1998 minutes reflect that the commissioners passed a motion providing that "the spur off of road #204[2] that goes to the Moore Ranch has been considered part of the County road system . . . and has been historically worked as a county road, therefore, be it resolved that it

---

[2] County Road 330 was previously assigned the number 204; the Reids do not concede, however, that the "Moore Ranch" mentioned in the 1998 order is the same property as that currently located within the 640-acre tract.

is hereby confirmed that it be part of the County Road system and shall remain as such for all purposes." There is no evidence that the spur road was subsequently added to the official County road map.

Smith did not inform the Reids or the trial court that he was seeking action from the County in 2011. He also failed to inform the commissioners that a lawsuit was pending and a temporary restraining order had been issued preventing him from using the spur road across the Reid Ranch. At trial, County Judge Souli Shanklin testified that the commissioners had no knowledge that the spur road was the subject of pending litigation, and that had they known, they would not have adopted the resolution. Shanklin testified that the commissioners' court learned about the lawsuit and temporary restraining order immediately after the February 8, 2011 meeting recessed, when the sheriff asked Smith "to go out with him to show him what needed to be done, and Smith told him that he could not because there was a restraining order against him on that deal."

When the Reids learned about the 2011 resolution, they joined Edwards County as a third-party defendant in the underlying lawsuit and challenged the validity of the resolution. On May 19, 2012, Edwards County entered into an agreed judgment with the Reids wherein the County agreed that the February 8, 2011 resolution "was not intended to acquire any public rights in any road spur off of County Road 330 as described in the resolution; and to the extent the resolution is alleged to be an act acquiring or attempting to acquire public rights in the spur under Chapters [sic] 281 or Chapter 258 of the Texas Transportation Code," the resolution is invalid, unenforceable, and void. Further, the County agreed that "the Resolution specifically withheld the addition of the spur as a county road on the County's Texas Transportation Code Chapter 258 County Road Map." Finally, the County agreed that it "made no effort to comply with the notice and other procedures required by Chapters 281 and 258 of the Texas Transportation Code." By entry of the agreed

judgment, the Reids nonsuited the County. The County, therefore, did not participate in the underlying trial, and stipulated that it would agree to be bound by the trial court's judgment.

In May 2011, the Reids amended their petition to add an allegation related to a small, 1.165-acre piece of land located near the southern boundary of Reid Ranch and the northern boundary of Smith's 640-acre tract. The 1.165-acre tract of land has been referred to throughout this litigation as the "bubble." The "bubble" contains a natural spring that was fenced in to avoid washouts. The Reids' new claim alleged prior owners of the two ranches had agreed the "bubble" was a part of the Reid Ranch and that future owners would not claim the "bubble" by adverse possession. Smith filed an answer asserting the affirmative defenses of easement by estoppel, adverse possession, and impermissible collateral attack.

After multiple summary judgment motions were denied, the case proceeded to a bench trial on March 26, 2013. Prior to trial, the parties stipulated on the record that: there is no record access, easements, or agreements across the Reid tracts in favor of the Smith tracts; and there are no recorded dedications, purchases, condemnation, or final judgment of adverse possession in favor of the public as to any portion of the Reid Ranch as it relates to the spur road.[3] The trial court heard testimony from multiple witnesses and admitted documentary evidence. Following the bench trial, the trial court ruled in favor of the Reids, finding that: the spur road is not a public road; the spur road is not an easement appurtenant to the Smith tract; the Cloudt Deed creates a cloud upon the Reids' title to the sixth and third tracts (i.e., the "bubble"); Smith claimed the bubble by adverse possession; the claim by Smith to adverse possession of the bubble was a breach of an express covenant not to so claim the land by adverse possession; and the Reids are entitled to enforce the terms of the express covenant not to claim the land by adverse possession. The trial

---

[3] The parties further stipulated that Smith abandoned his claim that the spur road is a public road by virtue of the doctrine of implied dedication and his claim of easement by necessity across the Reid property.

court therefore ordered that the parties are authorized to place boundary fences and that the Reids are granted a permanent injunction against Smith prohibiting him from utilizing any portion of the Reid Ranch to access the Smith Ranch. The trial court also awarded the Reids court costs and attorney's fees in the amount of $79,171.30 for trial and $20,000 for appeal. The trial court signed two sets of findings of fact conclusions of law in support of its judgment.

## DISCUSSION

On appeal, Smith argues that the trial court erred in: (1) declaring that the spur road is not a public road; (2) determining that Smith did not have an easement by estoppel; (3) determining that Smith is liable for breach of covenant; and (4) awarding attorney's fees to the Reids.

### *Standard of Review*

In an appeal from a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them, just as we would review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In conducting a legal sufficiency review, we consider all of the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). In determining whether legally sufficient evidence supports the finding under review, we must consider evidence favorable to the finding if a reasonable fact finder could consider it, and disregard evidence contrary to the finding unless a reasonable factfinder could not disregard it. *Id*. at 827. When a party attacks the legal sufficiency of an adverse finding on which it did not have the burden of proof, it must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). We will sustain a legal-sufficiency or "no evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to

prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810.

In conducting a factual-sufficiency review, we review all of the evidence in a neutral light and will reverse only if the evidence supporting the finding is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong or manifestly unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In a bench trial, the trial court is the sole judge of the witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

We review a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although a trial court's conclusions of law may not be challenged for factual sufficiency, we may review the legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id*. If we determine that a conclusion of law is erroneous, but the trial court nevertheless rendered the proper judgment, the error does not require reversal. *Id.*

### *Declaration of the spur road as private*

Smith first argues that the trial court erred by declaring the spur road is a private road. Smith contends the declaration flies in the face of 30 years of official documents, including a 1998 order and a 2011 resolution from the Edwards County Commissioners' Court, showing that the spur road is a county road as a matter of law. Smith further argues that the Reids cannot collaterally attack the commissioners' actions, such that the 2012 agreed judgment between the Reids and Edwards County does not nullify the 2011 resolution. The Reids respond that the spur road is not a public road because the County failed to utilize any of the statutorily-authorized methods of

acquiring the spur as public, and because the County clarified by way of a November 10, 1986 order that the spur is not a public road by omitting it from its official list of county roads.

Chapter 281 of the Texas Transportation Code sets out four methods by which a county with a population of 50,000 or less, such as Edwards County, may acquire a public interest in a private road. Under section 281.002, a county may acquire a public interest in a private road only by: (1) purchase; (2) condemnation; (3) dedication; or (4) a court's final judgment of adverse possession. *See* TEX. TRANSP. CODE ANN. § 281.002 (West 2013). A public interest in a private road may not be asserted until the commissioners' court has complied with the resolution requirement of section 281.005 and provided written notice to the owner of the road. *Id*. §§ 281.005-.006 (West 2013); *see also id*. § 258.002 (West 2013) (outlining procedures for adoption of county road map). It is undisputed that Edwards County did not comply with any of the statutorily-authorized methods of road creation as it relates to the spur road in either 2011 or 1998. Most notably, the County failed to comply with the notice provisions. Actions by a commissioners' court may be declared void for failure to comply with statutory requirements. *See Johnson v. Krieg*, 175 S.W.2d 102, 103-04 (Tex. Civ. App.—Austin 1943, writ ref'd w.o.m.) (affirming trial court's finding that commissioners' court order was void because it was made without notice to landowner). Lawrence Reid testified that, prior to filing the lawsuit at issue, neither he nor any other member of his family was notified that Edwards County was contemplating the status of the road. He further stated that they never received any notice from the County with respect to the spur road, meaning that the Reids had no notice of the 1970s commissioners' statements or the 1998 order or the 2011 resolution. Jennifer Reid Smith testified similarly. The trial court was free to consider the evidence that no notice was provided to the Reids before designating the spur road as a county road, as well as the fact that the spur road was

never added to the official county road map,[4] in concluding that the spur road is in fact a private road.

In addition, the trial court was free to consider the 2012 agreed judgment memorializing an agreement between the County and the Reids in which the County disavowed any interest the public might have in the spur road and agreed that the 2011 resolution is invalid, unenforceable, and void. The agreed judgment leaves no doubt that the County did not intend to acquire any public rights in the spur road. We also note that the 2011 resolution relied on the 1978 statement of former commissioner Marshall Craig and the "mid-1970s" verbal statement of current commissioner Lee Sweeten in finding that the spur road is a county road. Because individual members of the commissioners' court have no authority to bind the county by their separate actions, these statements do not constitute conclusive proof that the spur road is a public road. *See Ex parte Conger*, 163 Tex. 505, 357 S.W.2d 740, 743 (1962); *Canales v. Laughlin*, 147 Tex. 169, 214 S.W.2d 451, 455 (1948). The 1998 order similarly does not constitute conclusive proof that the spur road was public because, as earlier discussed, the order was made without prior notice to the Reids. *See* TEX. TRANSP. CODE ANN. §§ 281.005-.006 (commissioners' court must comply with resolution requirement of section 281.005 and provide written notice to landowner before asserting public interest in a private road).

Finally, we reject Smith's argument that the 2012 agreed judgment is an impermissible collateral attack on an order of the commissioners' court. *See Hanks v. Smith*, 74 S.W.3d 409, 412 (Tex. App.—Tyler 2001, pet. denied).[5] A collateral attack is an "attempt to avoid the effect of a

---

[4] The 2011 resolution specifically provided that the spur road would not be added to the official county road map until the proper statutory requirements were satisfied and "adding said spur to the map is expressly ordered by this Court."

[5] In *Hanks*, a landowner sought a declaration that a certain road was public despite a commissioners' court ruling to the contrary. *Hanks*, 74 S.W.3d at 410-11. The appellate court recited the general rule that "absent a showing of gross abuse of discretion, fraud or collusion in the commissioners' court's opening of a road, the order of the commissioners' court is binding and conclusive" and the judgment is not subject to collateral attack. *Id*. at 412. The appellate court

judgment in a proceeding brought for some other purpose. A direct attack on a judgment, conversely, is an attempt to change that judgment in a proceeding brought for that specific purpose, such as an appeal or a bill of review." *Nw. Indep. Sch. Dist. v. Carroll Indep. Sch. Dist.*, 441 S.W.3d 684, 692 (Tex. App.—Fort Worth 2014, pet. denied). Because the County was joined in the lawsuit filed by the Reids, the 2012 agreed judgment between the County and the Reids cannot constitute a collateral attack on the 2011 resolution.

Mindful of the fact that the fact-finder is the sole judge of the witnesses' testimony and of the weight to be given to their testimony under both a legal and a factual sufficiency review, we conclude that the evidence presented at trial would allow "reasonable and fair-minded people to reach the" decision made by the trial court, and that the trial court's findings regarding the private nature of the road are not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *City of Keller*, 168 S.W.3d at 819, 827; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Accordingly, we overrule Smith's sufficiency complaint and hold that the evidence presented at trial was sufficient to support the trial court's declaration that the spur road is not a public road.

### *Easement by Estoppel*

Smith next argues that the evidence is legally and factually insufficient to support the trial court's denial of an easement by estoppel. The trial court found that:

> The Reids never made any representation of the existence of an easement in favor of Smith or Smith's property across and over any portion of the Reids' property or the spur road; and

---

therefore held that the order of the commissioners' court reaffirming that the road was a county road was conclusive evidence on the issue of the status of the road, and that the trial court therefore erred in finding that the road was private. *Id*. The court went on, however, to note that a subsequent order of the commissioners' court "released all claim" the County had in the road, thereby abandoning the road. *Id*. Thus, the appellate court ultimately affirmed the trial court's declaration that the road was private. *Id*. at 414. To the extent that Smith contends that the *Hanks* court reversed the trial court's summary judgment, he is mistaken.

> The Reids never made any false or fraudulent statements or representations to Smith regarding access or use of the spur road, or represented to Smith that the Reids had or would dedicate the road to the public, or grant to Smith a private easement.

Three elements are necessary to the creation of an easement by estoppel: 1) a representation communicated, either by word or action, to the promisee; 2) the communication was believed; and 3) the promisee relied on the communication. *Storms v. Tuck*, 579 S.W.2d 447, 452 (Tex. 1979); *Holden v. Weidenfeller*, 929 S.W.2d 124, 131 (Tex. App.—San Antonio 1996, writ denied). Under this doctrine, a landowner may be estopped from denying the existence of an easement created by "representations" upon which another has detrimentally relied. *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209 (Tex. 1963).

Smith contends that he proved the elements of easement by estoppel by way of the following undisputed evidence at trial: Smith, his predecessors in interest, and other landowners regularly used the spur road without contest by Reid; the spur road was the only way in and out of the Smith Ranch due to frequent washouts and floods. Smith leased the 640-acre tract for three years before purchasing it from Cloudt, and relied on the unimpeded use of the spur road when deciding to purchase the property. Smith made improvements to his land, and relied on use of the spur road in doing so. He contends that the Reids' silence regarding the status of the road, and his reliance on such, constitutes an easement by estoppel.[6]

An easement by estoppel may not be predicated upon silence and passive acquiescence alone. *See Scott v. Cannon*, 959 S.W.2d 712, 721 (Tex. App.—Austin 1998, pet. denied) (mere silence cannot create an easement by estoppel except where there is a vendor-vendee relationship between the parties); *see also Stallman v. Newman*, 9 S.W.3d 243, 247 (Tex. App.—Houston [14th

---

[6] Smith also argues that the Reids' affirmative actions in the Bay-Houston litigation (i.e., agreeing to give Bay-Houston an easement over the spur road) operated to create an easement by estoppel.

Dist.] 1999, pet. denied) (finding that passive acquiescence in and of itself cannot rise to the level of a "misrepresentation" so as to create an easement by estoppel where there has never been any unity of title between the two tracts of land). In the absence of a vendor/vendee relationship, there was no duty on the Reids to caution or warn Smith or his predecessors-in-title that they should make no improvements upon their property without a secure right of ingress and egress appurtenant to their land. *See Roberts v. Allison*, 836 S.W.2d 185, 188 (Tex. App.—Tyler 1992, writ denied).

It is undisputed that the Reids never made an affirmative representation to Smith that the spur road was public, or that an easement existed in favor of Smith. It is further uncontested that Smith's use of the road across the Reids' property was always permissive, up until the time he purchased the 81-acre tract. The Reids made no misrepresentation, nor did they engage in overreaching conduct by their silence; they had no duty to speak. *See Wilson v. McGuffin*, 749 S.W.2d 606, 610-11 (Tex. App.—Corpus Christi 1988, writ denied). Although Smith may have made improvements upon his property, the record contains no evidence that he made the improvements in reliance on any express promise by the Reids. Further, this case does not involve a landlocked tract, and once Smith purchased the additional acreage in 2010, alternative means of ingress and egress to the Smith property were available without use of the spur road across the Reid Ranch. Accordingly, Smith has failed to establish any of the elements of an easement by estoppel and we therefore overrule his second issue.

### Breach of Covenant Not to Adversely Possess the "Bubble"

Smith took title to his 640-acre tract subject to a covenant not to claim the Reids' land by adverse possession. The Reids' and Smith's predecessors in title executed the agreement because the terrain of their ranches required the fence-line to deviate from the true boundary line in several places, and neither wanted the deviation to turn into a claim of adverse possession. The Reids'

predecessor in title, R.T. Craig, and Smith's predecessor in title, J.A. Blalack, struck the following

agreement:

> WHEREAS, it was and is the intention of said parties to claim their respective lands according to survey lines and according to the description contained in the several deeds of conveyance under which said parties own and possess said respective lands and not to claim said lands as differently divided by the division fence between said parties as above shown . . . .
>
> WHEREAS, said parties desire to evidence in writing said arrangement and to show that they did not and do not intend to claim and possess said premises adversely to each other:
>
> NOW, THEREFORE KNOW ALL MEN BY THESE PRESENTS: That we, R.T. Craig and J.A. Blalack, in consideration of the premises, hereby mutually agree that we do not claim adversely to each other . . . J.A. Blalack for himself likewise contracts and agrees to and with the said R.T. Craig that he, the said J.A. Blalack has not claimed . . . the said portion of the South West one-fourth of Survey 50 which is cut into the outside inclosure [of] the said J.A. Blalack and further likewise agrees that he does not and will not claim or assert any interest or title therein but holds said premises subject to the claim and ownership of the said R.T. Craig and the said parties agree that this contract is binding upon their heirs and assigns.

The Reids pleaded that Smith's deed, which contained a "bubble" of land within their boundary,

constituted a cloud on their title and constituted a breach of the covenant not to adversely possess.

In the final judgment, the trial court found that "Smith claimed such 'bubble' by virtue of adverse

possession" and that assertion of this claim is "in fact a breach of an express covenant not to so

claim land . . . by adverse possession." On appeal, Smith asserts that this finding is not supported

by legally or factually sufficient evidence.

First, Smith argues that the Reids' breach of covenant claim is barred by a four-year statute

of limitations. *See Malmgren v. Inverness Forest Residents Civic Club, Inc.*, 981 S.W.2d 875, 877

(Tex. App.—Houston [1st Dist.] 1998, no pet.) ("Actions to enforce restrictive covenants are

controlled by the four-year statute of limitations."). The Reids respond that Smith has waived his

affirmative defense of limitations because he failed to plead or argue it below. Smith's "Fourth

Amended Original Answer, Counter-Claim and Affirmative Defenses," contains a section titled

"Claims/Affirmative Defenses." Under this heading are two claims/affirmative defenses: (A) Easement by Estoppel and (B) Adverse Possession. The "adverse possession" heading contains the following language:

> The Defendant, relying on his own deed from D.L. Cloudt in 2003, claims ownership of "the bubble," which lies at the entrance to the Smith tract, *further states that Plaintiffs' alleged cause of action is barred by limitations set forth in Sections 16.024, 16.025[,] and 16.026 of the Texas Civil Practice and Remedies Code.* The deed to Smith dated May 2003 is recorded in Volume 212, Page 821 of the Edwards County deed records.

> Moreover, "the bubble" was conveyed to Smith's predecessor, Denman L. Cloudt ("Cloudt") by Deed dated November 16, 1998, recorded at Volume 161, Page 364 of the Edwards County deed records. "The bubble" is described by metes and bounds in the Deed to Cloudt. "The bubble" has been under fence and considered part of what is the Smith Ranch since the 1970's, prior to both Cloudt and Smith's ownership.

(Emphasis added).[7] Sections 16.024-.026 of the Texas Civil Practice and Remedies Code pertain to adverse possession; none of the sections contain a four-year limitations period. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.024-.026 (West 2002) (providing three, five, and ten-year limitations period for adverse possession claims).

We agree that Smith's pleadings, which only briefly mention limitations under the adverse possession heading, failed to put the Reids on notice that he was claiming a limitations defense. *See* TEX. R. CIV. P. 45, 47. A review of Smith's live pleading would not have provided notice to a reasonably competent attorney of Smith's intent to assert the affirmative defense of limitations. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000); *Broom v. Brookshire Bros., Inc.*, 923 S.W.2d 57, 60 (Tex. App.—Tyler 1995, writ denied). Smith contends that absent the Reids' failure to specially except to his pleading, his pleading is sufficient and he

---

[7] The pleading also contains a second section titled "Affirmative Defenses." Under this heading, four affirmative defenses are listed as follows: "(A) Estoppel; (B) Estoppel / Silence / Duty to Speak; (C) Adverse Possession; and (D) Impermissible Collateral Attack." There is no mention of the term "limitations" within the discussion of these affirmative defenses.

did not waive his affirmative defense of limitations. We disagree that there was any defect in the pleadings calling for special exceptions. *See Auld*, 34 S.W.3d at 896 (stating an opposing party should use special exceptions to identify defects in a pleading so that they may be cured, if possible, by amendment). The Reids were entitled to rely on Smith's specific pleading of "adverse possession," and were not required to alert Smith to another possible theory of recovery. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 345 (Tex. 2011) ("A party is not required to specially except to a pleading defect if it lacks notice of the other party's intent."). Because limitations is an affirmative defense that is waived unless affirmatively pleaded, Smith has failed to preserve his limitations complaint for our review. *See* TEX. R. CIV. P. 94; *Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 611 (Tex. 2012).

Second, Smith contends that he is not bound by the Craig-Blalack agreement and that the agreement is not tied to the "bubble." We again disagree. The Craig-Blalock agreement provides that the "parties agree that this contract is binding upon their heirs and assigns." Because the original parties to the agreement intended it to be binding upon their heirs and assigns, the covenant runs with the land. *See Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987) ("In Texas, a covenant runs with the land when it touches and concerns the land; relates to a thing in existence or specifically binds the parties and their assigns; is intended by the original parties to run with the land; and when the successor to the burden has notice."); *see also Montfort v. Trek Res., Inc.*, 198 S.W.3d 344, 355 (Tex. App.—Eastland 2006, no pet.) (intent to run with the land may be evidenced by language stating that covenant binds drafters' "successors and assigns"). As such, Smith was bound by the covenant not to adversely possess the bubble.

Third, Smith argues the trial court's negative finding as to adverse possession precludes a finding of breach of covenant. This argument is disingenuous, because the agreement merely prohibits a "claim" or assertion of interest in the property—it is immaterial that the claim of

adverse possession turns out to be unmeritorious or unsuccessful. We therefore cannot agree that the trial court erred in finding that Smith claimed the "bubble" by adverse possession and that assertion of this claim constituted a breach of an express covenant. We overrule Smith's issue related to breach of the covenant not to adversely possess the "bubble."

***Attorney's Fees***

Finally, Smith contends we should vacate the award of attorney's fees. The trial court's judgment provides: "Under the discretionary powers of the Court to award attorneys fees under Chapter 38 of the Texas Civil Practices [sic] and Remedies Code, the Plaintiffs are awarded attorneys fees against the Defendant, Randy K. Smith through the trial in the amount of $79,171.30, and are conditionally awarded attorney fees against Defendant, Randy K. Smith in the event that the Defendant Smith appeals this matter to the 4th Court of Appeals in the amount of $20,000." Smith claims that although the trial court awarded attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code, the Reids did not succeed on any Chapter 38 claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2008).[8] We disagree. The Reids' claim for breach of the covenant not to adversely possess the "bubble" sounds in contract. *See id.* § 38.001(8); *Davis v. Canyon Creek Estates Homeowners Ass'n*, 350 S.W.3d 301, 313 (Tex. App.—San Antonio 2011, pet. denied) ("A restrictive covenant is a contract subject to the same rules of construction and interpretation as any other contract."); *Candlewood Creek Neighborhood Ass'n v. Gashaye*, No. 05-11-00380-CV, 2012 WL 3135721, at *2 (Tex. App.—Dallas Aug. 2, 2012, no pet.) (mem. op.) (holding that a covenant is a contract between the parties, and that recovery of attorney's fees is permitted on a breach of contract action under section 38.001(8));

---

[8] Section 38.001 provides: "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2008).

*but see Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 74-75 (Tex. App.—Houston [14th Dist.] 2014, pet. filed) (holding that breach of deed restriction cannot authorize award of attorney's fees under Chapter 38). Smith's reliance on *Perez v. Tex. Disposal Sys., Inc.*, 103 S.W.3d 591, 592 (Tex. App.—San Antonio 2003, pet. denied), is misplaced because it pertains to the recovery of attorney's fees under section 15.51 of the Texas Business and Commerce Code. *See* TEX. BUS. & COM. CODE ANN. § 15.51 (West 2011) ("Procedures and Remedies in Actions to Enforce Covenants Not to Compete"). Accordingly, we conclude the award of attorney's fees under Chapter 38 was proper.

In any event, the trial court was authorized to award attorney's fees under the Uniform Declaratory Judgments Act. Section 37.009 of the UDJA provides: "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008). In a declaratory judgment action, the trial court may award either party costs and reasonable attorney's fees as are equitable and just. *See Arthur M. Deck & Assocs. v. Crispin,* 888 S.W.2d 56, 62 (Tex. App.—Houston [1st Dist.] 1994, writ denied). The question, then, is not whether the Reids' pleadings include a specific request for attorney's fees under the UDJA, but whether the action between the Reids and Smith was one "under this chapter," i.e., whether it was a declaratory judgment action. It is undisputed that the Reids sought declaratory relief against Smith under the UDJA. Thus, the trial court was authorized to award attorney's fees to any party with pleadings requesting them. *See Purvis Oil Corp. v. Hillin*, 890 S.W.2d 931, 939 (Tex. App.—El Paso 1994, no writ) (concluding that party moving for attorneys' fees in declaratory judgment action need not specify statutory authority for award so long as that party has pleaded for attorneys' fees). The Reids sought recovery of attorneys' fees under section 38.001, the UDJA, and under common law.

We review a trial court's decision to award attorney's fees under the UDJA for an abuse of discretion. *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)). We employ a hybrid analysis in which the "reasonable and necessary" requirements are questions of fact determined by the factfinder but the "equitable and just" requirements are questions of law for the court. *Ridge Oil Co.*, 148 S.W.3d at 161. The party seeking to recover attorney's fees bears the burden of proof. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). Based on the record before us, we cannot say that the trial court abused its discretion when it awarded attorney's fees to the Reids for trial.

As to the amount of the attorney's fees, Smith argues that the Reids should only recover 10% of $87,613.30. Specifically, Smith alleges that evidence was presented that the Reids incurred a total of $87,613.30 in attorney's fees at trial, but counsel testified that only 10% of the fees were incurred in relation to the Smith's claim of adverse possession of the "bubble." Again, we disagree. Itemized invoices were presented in support of the entire amount awarded ($79,171.30), and Smith lodged no objection to the evidence at trial. Thus, Smith has waived his segregation complaint on appeal. *See* TEX. R. APP. P. 33.1(a); *Green Int'l., Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). Nonetheless, the Reids were entitled to all of their requested fees because the facts underlying their breach of contract and declaratory judgment claims encompassed 100% of the fees. Counsel testified that he spent 10% of his time on the adverse possession claim; 30% on the abandoned claims of easement by necessity and public road by implied dedication; 30% on the 2011 resolution; and 30% on the temporary restraining order, request for declarations, and defending the easement by estoppel. Accordingly, the trial court did not abuse its discretion in awarding $79,171.30 in attorney's fees for trial.

We do, however, agree with Smith that the award of appellate attorney's fees should have been conditioned on Smith's unsuccessful appeal to this court. Appellate attorney's fees must be

conditioned on success in the appeal. *Gilbert v. City of El Paso*, 327 S.W.3d 332, 337-38 (Tex. App.—El Paso 2010, no pet.). We therefore modify the judgment to make the award of appellate attorney's fees contingent upon an unsuccessful appeal by Smith. *See Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 515 (Tex. App.—Fort Worth 2011, pet. denied). As such, Smith's final issue is sustained in part.

## CONCLUSION

The trial court's judgment is modified to condition the award of appellate attorney's fees on an unsuccessful appeal by Smith. In all other respects, the judgment of the trial court is affirmed.

Rebeca C. Martinez, Justice

CAUSE NO. 3798

| | | |
|---|---|---|
| LAWRENCE REID, ROYCE REID, | § | IN THE DISTRICT COURT |
| JENNIFER HEATH, AND THL GP, INC. | § | |
|     *Plaintiffs* | § | |
| | § | |
| V. | § | 63RD JUDICIAL DISTRICT |
| | § | |
| RANDY K. SMITH AND EDWARDS | § | |
| COUNTY | § | |
|     *Defendants* | § | EDWARDS COUNTY, TEXAS |

## JUDGMENT

On the 26TH day of March, 2013 came on to be heard the above styled cause of action. Plaintiffs, Lawrence Reid, Royce Reid, Jennifer Heath and THL GP, Inc. (collectively referred hereto as "Reid") appeared in person and by and through their attorney of record, Joe M. Davis and Defendant, Randy K. Smith ("Smith") appeared in person and by and through his attorneys of record, J. Ken Nunley and Chad M. Upham, and Edwards County appeared personally through its County Judge Souli Shanklin and by and through its attorney of record Chad Elkins and announced ready for trial. The jury was waived and all questions of fact were submitted to the Court.

Before trial, Edwards County announced to the Court that while it was a Defendant in the case it wished to waive its right to participate and be present during the trial. Edwards County stipulated to the Court that it would agree to be bound by the Judgment of this Court following a trial on the merits. All parties stipulated their agreement to allow Edwards County to be excused from participation at trial.

The Court determined that it had jurisdiction over the parties and subject matter of this case.

The Court having considered the evidence, arguments of counsel and credibility of the witnesses finds as follows:

**632**

I, Olga Lydia Reyes, District Clerk, Edwards County, Texas, do hereby certify that this is a true and correct copy as appears of record in my office. Witness my name and seal of office on _9/17/13_
Olga Lydia Reyes, District Clerk
By _____ , Deputy

Throughout this trial the principal issue has been the status of one certain road which has been described as the "spur" or "spur road". Such road is a road tract which departs from Edwards County Road number 330 in a generally western direction, crossing from East to West across the Reid "Sixth Tract" being the SE ¼ of Survey 50 Abstract 1527, GC & SF Ry Co., and Reid "Third Tract", being the S.W. ¼ of Survey 50 Abstract 2705, GC & SF Ry Co., Edwards County, Texas, and then entering into the Smith Tract Survey 49, Abstract 1257 S.P.RyCo., at the point that such road intersects with the boundary line between said Survey 50 and said Survey 49 as such is shown on MDS/Boerner Plat attached hereto.

THE COURT FURTHER FINDS that the spur may have been attempted to be described in certain documents received into evidence, specifically being a 1974 letter signed by County Judge Allen Stovall which is recorded at Volume 56, Page 88, Deed Records of Edwards County, Texas, a 1978 statement of Edwards County Commissioner Marshall Craig which is recorded at, Volume 56, Page 29, Deed Records of Edwards County, Texas, June 11, 1998 minutes of Edwards County Commissioners Court which are recorded at Volume 12, Page 543, Commissioner Court Records of Edwards County, Texas and a January 18, 2011 Resolution of the Edwards County Commissioners Court which is the subject of the earlier judgment of this court in this cause.

Chapter 258 allowed a county to clarify its interest in a road by proposing a county road map which the claims are public through either Chapter 281, or other law, or by continuous maintenance. The legislature enacted Chapter 258 to help counties to clarify their public interest in roads in which counties claims existed before the enactment of

2

*633*

I, Olga Lydia Reyes, District Clerk, Edwards County, Texas, do hereby certify that this is a true and correct copy as appears of record in my office. Witness my name and seal of office on 9/17/13

Olga Lydia Reyes, District Clerk

By _____, Deputy

Chapter 281. There is no evidence of Edwards County acquiring public interest in the spur by purchase, condemnation, dedication, or a Court's final judgment or any other law. Nor did the county include the spur on its road map thereby clarifying its status as a public road. When a county can only claim public interest in a road by continuous maintenance, the county has the burden to prove said continuous maintenance given that evidence thereof is primarily within the county's control. "Continuous maintenance" is defined as grading or other routine road maintenance beginning before September 1, 1981, and continuing until the date of protest. Although there is evidence of occasional maintenance by the county, there is insufficient evidence of continuous county maintenance for the Court to declare a public interest in the spur. THE COURT FURTHER FINDS that the "spur road" is not a public road.

THE COURT FURTHER FINDS that there are no access easements appurtenant to Smith's Tract Survey 49, Abstract 1257 S.P.RyCo., wherein the Reid "Sixth Tract" being the SE ¼ of Survey 50 Abstract 1527, GC & SF Ry Co., Reid "Third Tract", being the S.W. ¼ of Survey 50 Abstract 2705, GC & SF Ry Co., Edwards County, Texas, is the servient estate; and specifically that the "spur" road at issue herein is not an easement appurtenant to the Smith Tract Survey 49, Abstract 1257 S.P.Ry.Co.

THE COURT FURTHER FINDS that the 2003 Deed from D.L. Cloudt, Sr. to Randy K Smith which is recorded at Volume 212, Page 821, of the Official Public Records of Edwards County Texas creates a cloud upon the "Reid" title to the "Sixth Tract" being the SE ¼ of Survey 50 Abstract 1527, GC & SF Ry Co., and the Reid "Third Tract", being the S.W. ¼ of Survey 50 Abstract 2705, GC & SF Ry Co., Edwards County, Texas, such

3

634

I, Olga Lydia Reyes, District Clerk, Edwards County, Texas, do hereby certify that this is a true and correct copy as appears of record in my office. Witness my name and seal of office on 9/17/13

Olga Lydia Reyes, District Clerk

By _____, Deputy

cloud is created by virtue of the deed without warranty to lands located in the Reid "Sixth Tract" being the SE ¼ of Survey 50 Abstract 1527, GC & SF Ry Co., and the Reid "Third Tract", being the S.W. ¼ of Survey 50 Abstract 2705, GC & SF Ry Co., Edwards County, Texas. Throughout this trial such land burdened by the Deed Without Warranty has been described as the "Bubble", and is described as a tract of land approximately 1.165 acre.

THE COURT FURTHER FINDS that in this suit, Smith claimed such "bubble" by virtue of adverse possession.

THE COURT FURTHER FINDS that the claim by Smith to adverse possession of the "bubble" was in fact a breach of an express covenant not to so claim land in the SW ¼ of Survey 50, Abstract 2705 by adverse possession, which covenant originated in a agreement between RT Craig and Jay A. Blalock dated July 27, 1937, and which is recorded at Volume 31 page 563 of the Deed Records of Edwards County, Texas. Said agreement was incorporated by reference into the deed from D.L. Cloudt, Sr. to Randy K. Smith, which deed was recorded at Volume 212, Page 821 of the Official Public Records of Edwards County.

THE COURT FURTHER FINDS that as the record owners of SW ¼ of Survey 50, Abstract 2705, Reid is entitled to enforce the terms of said express covenant not to so claim land by adverse possession.

It is therefore ORDERED, ADJUDGED and DECREED:

That the boundary between the Smith Tract, Survey 49, Abstract 1257, S.P.Ry.Co., and the Reid Reid "Sixth Tract" being the SE ¼ of Survey 50 Abstract 1527,

4

635

I, Olga Lydia Reyes, District Clerk, Edwards County, Texas, do hereby certify that this is a true and correct copy as appears of record in my office. Witness my name and seal of office on _____
Olga Lydia Reyes, District Clerk
By _____, Deputy

GC & SF Ry Co., and Reid "Third Tract", being the S.W. ¼ of Survey 50 Abstract 2705, GC & SF Ry Co., Edwards County, Texas is determined to be as shown on the MDS/Boerner plat which was admitted into evidence and which is affixed hereto and made a part of this judgment. The parties are authorized to place their boundary fences in accordance therewith, and all parties are hereby enjoined from preventing or sabotaging any such placement of boundary fences.

The Plaintiffs are granted a permanent injunction against the Defendant Randy K. Smith, his agents and employees, prohibiting them from utilizing any portion of the Reid Ranch to access the Smith property or any portion thereof.

Under the discretionary powers of the Court to award attorneys fees under Chapter 38 of the Texas Civil Practices and Remedies Code, the Plaintiffs are awarded attorneys fees against the Defendant, Randy K. Smith through the trial in the amount of $79,171.30, and are conditionally awarded attorney fees against Defendant, Randy K. Smith in the event that the Defendant Smith appeals this matter to the 4th Court of Appeals in the amount of $20,000.

Plaintiffs shall additionally recover all of their court costs.

All relief not expressly granted in this Judgment is denied.

SIGNED this __2__ day of __May__, 2013.

_____
JUDGE REX EMERSON

FILED FOR RECORD
At 3:25 O'clock P M

MAY 3 2013

OLGA LYDIA REYES
DISTRICT CLERK
EDWARDS COUNTY, TEXAS
By _____ Deputy

5

636

I, Olga Lydia Reyes, District Clerk, Edwards County, Texas, do hereby certify that this is a true and correct copy as appears of record in my office. Witness my name and seal of office on 9/17/13
Olga Lydia Reyes, District Clerk
By _____ Deputy